MICHAEL W. LAYTON *v.* STATE OF INDIANA.

[No. 672S81.  Filed October 5, 1973.]

*Donald E. Transki,* of Michigan City, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,* Assistant Attorney General, for appellee.

ARTERBURN, C.J.—On December 15, 1971, a jury found the Appellant guilty of first degree murder, and after a presentence investigation the Court, on January 14, 1972, ordered that Appellant be imprisoned in the Indiana State Prison for life. The Appellant filed a timely Motion to Correct Errors, and it is from the overruling of that motion that Appellant now appeals to this Court.

Briefly, the circumstances appear to have been that Appellant, an inmate at the Indiana State Prison, already under life sentence for murder and participating in robbery, threw gasoline on and ignited another inmate while the other inmate was locked in a cell. Appellant testified that he did the act because it was the only way to prevent the decedent, a physically more powerful man, from imposing his sexual will upon the Appellant.

Appellant presents five allegations of error. First, Appellant maintains that he should have been discharged prior to trial pursuant to CR. 4, which requires such a discharge if a defendant is not brought to trial within six months of the date of his arrest on such charge or the date the charge is filed, whichever is later. However, the undisputed facts are that one of the delays which caused the trial to be set beyond the six-month period was pursuant to a request for a change in trial date "either prior to or after the original date for trial" by Appellant's attorney. When the Court changed the trial date to a day beyond the six-month period, Appellant's attorney acquiesced. Under these circumstances, Appellant is estopped to assert CR. 4, which exempts from its coverage situations wherein a continuance was had on the motion of the defendant or the delay was caused by an act of the defendant. *Bryant* v. *State* (1973), 261 Ind. 172, 301 N. E. 2d 179.

Appellant's second specification of error revolves around the admission into evidence of a pre-trial confession. Appellant

suggests that since a written transcription of the confession and the tape-recording itself were not totally consistent, both having been presented to the jury, it is necessary that the customary waiver of *Miranda* rights be on the tape-recording as well as in written form as it is in the instant situation. The authority for this proposition is purportedly *Lamar* v. *State* (1972), 258 Ind. 504, 282 N. E. 2d 795. However, that case simply set forth as one of five criteria for establishing a foundation for the admission of a sound-recording "that all required warnings were given and all necessary acknowledgments and waivers were knowingly and intelligently given." The precise medium through which a waiver is obtained is not delimited by this rule. Appellant does not, at this portion of his argument, maintain that the waiver was in fact involuntary. We do not see in what ways defendant's rights will be better protected by requiring that a waiver be preserved in the same medium as the confession.

Appellant also contends that the confession itself was involuntary because he was under the influence of drugs at the time he gave the confession. Appellant testified that on the date of the alleged crime, which was also the day Appellant gave the confession, he had taken eleven (11) "Amesels," "phenobarbital," and that two "shots" had been administered to him after the alleged crime had occurred and before he gave the confession. Yet Appellant adduced no testimony as to the medical nature of these drugs. That is to say, there is in the record no evidence from which one could conclude that if the drugs were taken or administered they were of the kind or amount that would possibly produce an involuntary confession. The testimony as to the administration of the drugs came only from the defendant's mouth. Appellant does not even allege that the drugs contained "properties which may trigger statements in a legal sense involuntary." *Townsend* v. *Sain* (1962), 372 U.S. 293, 9 L. Ed. 2d 770, 83 S. Ct. 745. Since under IC 1971, 35-5-5-2 [*Burns Ind. Ann. Stat.* § 9-1634, 1635 (1972 Supp.)] the

determination of the voluntariness of a confession is a matter of fact for the Trial Court, we think that there has been no showing by Appellant that the Trial Court was clearly erroneous in its determination that the confession was voluntary.

Appellant also offers the theory that the confession was inadmissible because Appellant had not been advised prior to confessing that the victim had in fact died of the act to which Appellant confessed. In the first place, the following testimony from Officer Garmin appears in the record:

> "A. I believe he asked me before we started the tape. He asked me—I can't remember—he asked me if he was dead, or he said, 'He's dead, isn't he?' And I did answer him in the affirmative. It is not on the tape, no, sir."

Secondly, it is not denied that Appellant was advised that the interrogation was to be about the incident in question, and *Miranda* warnings do not include a statement of the consequences of the behavior which is under investigation. *Miranda* v. *Arizona* (1966), 384 U.S. 436, 479, 16 L. Ed. 2d 694, 86 S. Ct. 1602.

Appellant's third contention is that the Trial Court erred in admonishing Appellant's witnesses of the possible consequences of their testimony. The weight of this objection can be gleaned from consideration of the following typical admonishments:

> "The Court: Mr. Gilbert, today in this court there has been some evidence by other witnesses which possibly could result in action against some inmates of the Indiana State Prison. So therefore, it is the court's duty to warn you that anything you say here in court today could possibly be used against you. You may proceed, Mr. Transki."

> "Just a minute, Mr. Transki. Mr. Taber, it's the duty of the court to warn you you are in open court and anything you say could be used against you. You understand that?"

It is not improper for a Court to advise a witness, appearing without counsel, of his privilege against self-incrimination.

98 C. J. S. *Witnesses* § 449 (1957). Furthermore, there is nothing in the manner in which the Trial Court advised the witnesses, nor does Appellant allege to the contrary, to indicate that the witnesses altered their testimony in ways detrimental to the Appellant. It is true that two of the inmate-witnesses displayed reluctance in giving testimony. However, other inmates freely and fully answered those questions about which the reluctant witnesses had hedged, and Appellant fails to show how the absence of this merely cumulative testimony prejudiced him.

Appellant's fourth argument is that his cross-examination of two of the State's witnesses was prejudiced by the Court sustaining objections which the State interposed to several of Appellant's questions. However, Appellant subsequently made both of these witnesses his own witnesses and elicited from them on direct examination the information he had sought to discover through cross-examination. Consequently, we see no merit in this argument.

Appellant's final argument is that the State's rebuttal evidence about the prior history of inmates killing other inmates should have been excluded because it was beyond the scope of the cross-examination. Appellant has confused redirect evidence with rebuttal evidence. Rebuttal evidence is, as its name indicates, that which tends to explain or contradict or disprove evidence offered by the adverse party. I.L.E. *Trial* § 53 (1960). The admissibility of rebuttal, like the admissibility of redirect, evidence is within the sound discretion of the trial court. I.L.E. *Evidence* § 54 (1959). The theory of the defense in this case was that Appellant had killed in self-defense. Appellant had introduced evidence pertaining to the violent nature of the decedent. Appellant had also introduced evidence portraying the prison as a society within which violence was a common and accepted survival mechanism. The State wished to show that nevertheless lethal violence was a rarity within the prison-society and that there were avenues freely open for complaint and pro-

tection. We can not say that it was an abuse of discretion for the Trial Judge to admit the disputed evidence for any light it might throw on the prison milieu, a subject introduced by the **Appellant.**

Having found none of the Appellant's arguments meritorious, we affirm the judgment of the Trial Court.

Givan, Hunter, Prentice, JJ., concur; DeBruler, J., concurs in result.

NOTE.—Reported in 301 N. E. 2d 633.