Corinthian **MANLEY**, Appellant
(Defendant Below),

v.

**STATE of Indiana**, Appellee
(Plaintiff Below).

No. 3–380A77.

Court of Appeals of Indiana,
Fourth District.

Sept. 30, 1980.

Kenneth A. Manning, Dyer, for appellant.

Theodore L. Sendak, Atty. Gen., Kathleen G. Lucas, Deputy Atty. Gen., Indianapolis, for appellee.

YOUNG, Presiding Judge.

Corinthian Manley appeals his conviction of armed robbery contending that (1) the conviction is not supported by sufficient evidence; (2) the trial court erred in admit-

ting evidence regarding his arrest; and that (3) the trial court improperly excluded him and his counsel from an ex parte discussion between the trial judge and a witness. We affirm.

Manley was charged with two (2) counts of robbery while armed with a deadly weapon, a Class B felony, pursuant to IC 35–42–5–1, convicted of robbing George King and found not guilty of robbing John C. Collins.

King, the owner and bartender of the Calumet Tap testified that around closing time on June 3, 1979, a man who he identified as Manley, held a gun on him and said "George, this is a stick–up. Go back there and get me the money." Manley took money from the bar, ordered King outside and took money from King's pocket. While outside Manley fired the weapon in the air. King, who had known Manley for 15 years, was asked his state of mind when confronted with Manley and the gun. He responded "I was afraid he might have shot me sure enough" and that he would not have given Manley the money if Manley had not had a gun in his hand. Three eyewitnesses corroborated King's version of these events.

To argue that this evidence is insufficient to support the conviction for armed robbery defies credulity.

▮ IC 35–42–5–1 provides as follows:
A person who knowingly or intentionally takes property from another person or from the presence of another person:
(1) by using or threatening the use of force on any person; or
(2) by putting any person in fear;
commits robbery, a Class C felony. However, the offense is a Class B felony if it is committed while armed with a deadly weapon, and a Class A felony if it results in either bodily injury or serious bodily injury to another person.

The State was required to prove the following elements: (1) An unlawful taking, (2) from the person of another, (3) any article of value (4) by violence or putting in fear and (5) that the act was committed while armed with a deadly weapon. *Taylor v. State*, (1978) Ind.App., 383 N.E.2d 1068; IC

35–42–5–1. The evidence was more than sufficient to prove the elements of the crime beyond a reasonable doubt.

▮ Manley argues that evidence of the events surrounding his arrest was improperly admitted. The evidence complained of consisted of testimony of two police officers who arrested Manley pursuant to an arrest warrant. The evidence showed that Manley attempted to run, then tried to pull out a gun, and finally kicked and fought even after he was handcuffed in the squad car. Evidence of attempted escape is always competent evidence of consciousness of guilt. *Lofton v. State*, (1978) Ind., 378 N.E.2d 834. Flight has always been recognized as a fact to be considered from which the jury may draw an inference of guilt, and evidence pertaining to the avoidance of arrest is properly admitted. *Porter v. State*, (1979) Ind., 391 N.E.2d 801. *United States v. Hampton*, (7th Cir. 1972) 457 F.2d 299, *cert. den.* 409 U.S. 856, 93 S.Ct. 136, 34 L.Ed.2d 101.

▮ Manley claims that the "plain clothes" worn by the policemen contributed to "the defendant's hostile reaction to his apprehension by the officers." There is no question that the officers clearly identified themselves and their intentions. Both wore badges and they stated, "Police Officers, and we're placing you under arrest." In addition, Manley admitted having known Officer Jackson since 1968, and even called him by a nickname at the time of the arrest. The two–week time span between the issuance of the warrant and its service did not render evidence of Manley's resistance inadmissible. During that time Manley was a fugitive. The evidence was properly admitted. · See, *Dunville v. State*, (1979) Ind., 393 N.E.2d 143.

▮ Manley argues that the evidence of the events surrounding his arrest was inadmissible because the arresting officers were from East Chicago and arrested him in Hammond. There is no merit in this argument. The warrant was issued by a Superior Court of Lake County, Indiana. It could have been served in any county of the

state where Manley was found. *James v. State*, (1972) 258 Ind. 392, 281 N.E.2d 469; *Sturm v. Potter*, (1872) 41 Ind. 181. IC 35–1–21–2 provides:

> Whenever *any* sheriff or *constable*, in executing a warrant, shall find that the defendant has crossed the boundary of the county in which the warrant issued into an adjoining county, such officer shall have the authority to enter the adjoining county and execute such warrant and make the arrest and return such defendant, without hindrance, into the county from which the warrant issued.

[Emphasis ours.] The statute is made applicable to city police officers by IC 18–1–11–4 which reads, in part, as follows: "The officers and members of the police force of every city possess all the common–law and statutory powers of constables ...." Clearly, city policemen may serve warrants in their own county although in a different city.

■ During the cross–examination, of King, the owner and bartender at the tavern, he was asked about closing hours, the sale of liquor without a license and gambling activities on the premises. Several of the questions were answered although possibly incriminating. The trial judge attempted to explain to King that he did not have to answer questions he felt might incriminate him. The witness became confused as to what questions he could properly refuse to answer asking at one point, what it meant to take the "Fifth." When he asked the trial judge for clarification, the judge ordered counsel for the State, defense counsel and the defendant from the courtroom and had the following discussion with the witness:

Q. What did you want to ask me, Mr. King.

A. I want to ask you about the law. About how much money I take in and all. Do I have to answer the question?

Q. If I deem the question to be relevant, you have to answer the question, yes. The only way you can refuse to answer is if you think it will get you in trouble with the law. That's what I meant about incriminate yourself.

A. He asked me about selling whiskey. I have to answer all of that?

Q. You don't have to answer any more questions about the selling of whiskey. We have gotten into that enough. Questions about the money are relevant because you say you were robbed and you say a certain amount of money was taken from you, and you have to answer questions about the money, you have to answer questions truthfully unless the question is wrong for another reason. If I say the objection is sustained, if the prosecutor objects and I sustain it, then you don't have to answer it, but other than that, you have to answer any and all questions he puts to you unless they are questions like I told you earlier. You don't have to answer.

A. About my closing time and stuff? I have to answer all that?

Q. I would advise you when he asks you about closing time, if you feel there is a chance you might get yourself in trouble, if there is a chance you feel you might be violating the law or something and you don't want to say that publicly under oath, I will advise you you don't have to answer that question, and you can refuse. The only questions you can refuse to answer are those you can get in trouble for. The money that you have that you take in, all bartenders have money behind the bar. That doesn't necessarily incriminate you, I wouldn't think, but if he asks you anything more about the gambling operation, you don't have to answer. Let's bring everybody else in.

It was proper for the trial judge to advise the witness of his right not to incriminate himself when asked to do so. *Layton v. State*, (1973) 261 Ind. 251, 301 N.E.2d 633; 98 C.J.S. *Witnesses* § 449 (1957). The question is whether it was error in excluding the defendant and his counsel from that discus-

sion thus violating the defendant's right to counsel at this stage of the trial.

Under the 6th Amendment of the United States Constitution an accused has the right to assistance of counsel at any stage of the prosecution where counsel's absence might derogate his right to a fair trial. *United States v. Wade*, (1967) 388 U.S. 218, 226, 87 S.Ct. 1926, 1932, 18 L.Ed.2d 1149; *Pirtle v. State*, (1975) 263 Ind. 16, 323 N.E.2d 634. The application of this rule depends upon whether the challenged event occurred at a "critical stage" of the trial. We hold that it did not. "Critical stage" has been defined as "those links in the prosecutorial chain of events in which the potential for incrimination inheres or at which the opportunity for effective defense must be seized or foregone." *United States v. Anderson*, (3d Cir. 1972) 461 F.2d 739, 742 (where pretrial photographic identification by witness was held not to be a critical stage of the proceedings).

"Critical stages" are those parts of the proceedings, where (1) incrimination may occur or (2) where the opportunity for effective defense must be seized or be foregone. There is nothing in the exchange between the trial judge and the witness touching upon the charge against Manley. The exchange occurred in the absence of the jury. The State was excluded and thus would not proceed with the trial. There was therefore no confrontation at which the defendant was "standing alone" contrary to *Wade, supra*, 388 U.S. at 226, 87 S.Ct. at 1932. Likewise, the absence of defense counsel did not foreclose any opportunity for effective defense. It was not therefore a critical stage in the proceedings. Although we do not perceive why the trial judge excluded counsel, doing so was not error in this case.

Affirmed.

CHIPMAN and MILLER, JJ., concur.