## DAVID HAROLD UTT A/K/A HAROLD DAVID UTT  v. WARDEN, BALTIMORE CITY JAIL

[No. 1183, September Term, 1980.]

*Decided April 14, 1981.*

The cause was submitted on briefs to COUCH, MACDANIEL and WEANT, JJ.

Submitted by *Alan H. Murrell, Public Defender,* and

*George E. Burns, Jr., Assistant Public Defender,* for appellant.

Submitted by *Stephen H. Sachs, Attorney General, Ann E. Singleton, Assistant Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Sandy Kemick, Assistant State's Attorney for Baltimore City,* for appellee.

MacDaniel, J., delivered the opinion of the Court.

In this appeal we are asked to consider whether the Sixth Amendment to the United States Constitution confers a right to have the assistance of counsel at a governor's extradition hearing. We shall hold that it does not.

Appellant David Harold Utt, a/k/a Harold David Utt, was wanted in Indiana on charges of theft. He fled that State but for one reason or another was apprehended by Maryland authorities (the record is not clear on the point). Word of appellant's arrest and detention reached Indiana authorities, whereupon the Governor of Indiana presented a demand for his extradition. On January 24, 1980, and in accordance with the Maryland Uniform Criminal Extradition Act,[1] an executive hearing was held to consider the matter. On January 28, 1980, the Governor of Maryland signed appellant's warrant of rendition.

By Order of the Baltimore City Court, entered March 3, 1980, appellant was remanded to the custody of the warden of the Baltimore City Jail pending extradition. On March 10, 1980, appellant filed a petition for a writ of *habeas corpus.* The petition was heard April 9, 1980, and the following stipulation entered into evidence:

> ". . . it is agreed and stipulated between the State and the petitioner that the petitioner received notification that there was to be an extradition hearing at the 16 Francis Street building, Jeffrey Building, in Annapolis. That is concerning the

---

1. Maryland Annotated Code (1957, 1978 Repl. Vol.), Art 41, §§ 16-43. *See* discussion accompanying n. 6, *infra.*

extradition. And that the petitioner requested that the Public Defender's Office represent the petitioner. And that the petitioner was told that it was the inappropriate time, that it was too soon, and that the Public Defender's Office would not represent the petitioner at that hearing. And that the only time that the Public Defender's Office would step in was after, or when a petition was filed for writ of habeas corpus, Your Honor. That the defendant did want an attorney to represent him. And the defendant did not have an attorney at the time...."

Appellant raised but one issue: denial of his Sixth Amendment right to counsel at the Governor's hearing. The petition was denied and this appeal followed.

Appellant here asserts, as he asserted below, that the State's failure to afford him the assistance of counsel at the Governor's (extradition) hearing amounts to a denial of due process of law, in violation of his rights under the Sixth and Fourteenth Amendments of the Constitution of the United States. Appellee replies that there is no constitutional or statutory right to counsel at a governor's hearing so that, even assuming appellant was indigent (there was no such proffer in the case), the State was under no obligation to provide it. We are aware of no decision of this Court or of the Court of Appeals in which this issue has been resolved.[2]

---

**2.** In Bartholomey v. State, 260 Md. 504, 530-31 (1971), as one of several issues raised, the appellant cited Coleman v. Alabama, 399 U.S. 1, 90 S. Ct. 1999, 26 L. Ed. 2d 387 (1970), as authority for the proposition that he had been denied his Sixth and Fourteenth Amendment constitutional rights to the assistance of counsel when he was not represented by an attorney at an extradition hearing in Delaware — allegedly a critical stage in the prosecution.

In Coleman, *supra,* the Supreme Court had held that the accused in that case had been denied his constitutional right to the assistance of counsel under the amendments mentioned because no counsel for him was present at his preliminary hearing in Alabama.

Rather than decide whether an extradition hearing was indeed a "critical stage" in the prosecution, requiring provision for the assistance of counsel, the Court of Appeals distinguished Coleman, *supra,* noting, at 260 Md. 531:

"We have found no decision of the Supreme Court holding that an extradition proceeding is a preliminary hearing at which counsel

The Sixth Amendment right to the assistance of counsel is a fundamental constitutional right, which has been made applicable to the States through the Fourteenth Amendment. *Gideon v. Wainwright,* 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963). Since the Supreme Court's decision in *Powell v. Alabama,* 287 U.S. 45, 53 S. Ct. 55, 77 L. Ed. 158 (1932), it has been clear that these constitutional rights attach whenever adversary judicial proceedings have been initiated against a defendant.[3] Although the Supreme Court has emphasized that "a person's Sixth and Fourteenth Amendment right to counsel attaches *only at or after* the time that adversary judicial proceedings have been initiated against him," and not before,[4] this is not to suggest that the constitutional right to counsel only attaches at trial itself. Rather, as the Court has made clear,[5] the right attaches at any point in the judicial proceedings against a defendant which may be termed a "critical stage." Generally, a critical stage has been reached whenever constitutional or other rights can be asserted or waived; when the opportunities for an effective defense must be seized or lost, or where events occur that can affect the entire trial.

In *United States v. Wade, supra,* 388 U.S. at 226-27, 87 S. Ct. at 1932, 18 L. Ed. 2d at 1149, the Court provided the following guide:

for the accused need be present; and we would not think it would be. The short answer to the appellant's contention, however, is that the *Coleman* case, in any event, only applies in cases in which a preliminary hearing was held on or after June 22, 1970, the date it was decided; and the present case was decided several months prior to that date."

**3.** *See* Johnson v. Zerbst, 304 U.S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938); Hamilton v. Alabama, 368 U.S. 52, 82 S. Ct. 157, 7 L. Ed. 2d 114 (1961); Gideon, *supra*; White v. Maryland, 373 U.S. 59, 83 S. Ct. 1050, 10 L. Ed. 2d 193 (1963); Massiah v. United States, 377 U.S. 201, 84 S. Ct. 1199, 12 L. Ed. 2d 246 (1964); United States v. Wade, 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S. Ct. 1951, 18 L. Ed. 2d 1178 (1967); Coleman v. Alabama, 399 U.S. 1, 90 S. Ct. 1999, 26 L. Ed. 2d 387 (1970).

**4.** Kirby v. Illinois, 406 U.S. 682, 688, 92 S. Ct. 1877, 1881, 32 L. Ed. 2d 411, 417 (1972). The Supreme Court held that a lineup after arrest but before initiation of adversary criminal proceedings — either by way of formal charge, preliminary hearing, indictment, information or arraignment — is not a criminal prosecution at which the accused is entitled to counsel as a matter of constitutional right.

**5.** See n. 3, *supra.*

". . . In addition to counsel's presence at trial, the accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, *where counsel's absence might derogate the accused's right to a fair trial.* . . . The presence of counsel at such critical confrontations, as at the trial itself, operates to assure that the accused's interests will be protected consistently with our adversary theory of criminal prosecution. . . ." (Emphasis added.)

And in *Gerstein v. Pugh,* 420 U.S. 103, 122, 95 S. Ct. 854, 867, 43 L. Ed. 2d 54, 70 (1975), the Supreme Court stated: "The Court has identified as 'critical stages' those pretrial procedures that would impair defense on the merits if the accused is required to proceed without counsel." (Citations omitted.)

In this case there can be no doubt that "adversary criminal proceedings" had been instituted against appellant prior to his extradition hearing (though the record does not precisely describe the manner in which he was charged), so the issue here thus resolves itself to whether such a hearing was a "critical stage" in those proceedings. Our resolution of this issue depends upon an analysis of "whether potential substantial prejudice to [appellant's] rights inheres in the particular confrontation [*i.e.,* the Governor's hearing] and the ability of counsel to help avoid that prejudice," *United States v. Wade, supra,* 388 U.S. at 227, 87 S. Ct. at 1932, 18 L. Ed. 2d at 1157 (1967), and so calls for a review of the purposes of extradition generally and of extradition procedure under Maryland law.

We note that extradition derives from the Constitution of the United States, Article IV, Section 2, clause 2 of which provides:

"A Person charged in any State with Treason, Felony or other Crime, who shall flee from Justice, and be found in another State, shall on demand of the executive Authority of the State from which he

fled, be delivered up, to be removed to the State having jurisdiction of the crime."

To implement this constitutional provision, Congress has provided in 18 U.S.C. § 3182 that:

"Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged."

The Supreme Court had occasion to consider the purposes and function of the Extradition Clause in *Michigan v. Doran*, 439 U.S. 282, 99 S. Ct. 530, 58 L. Ed. 2d 521 (1978), when the Court was asked to determine whether the courts of an asylum state may nullify the executive grant of extradition on the ground that the demanding state had failed to show a factual basis for its charge supported by probable cause. It stated, at 439 U.S. 287-89, 99 S. Ct. 534-35, 58 L. Ed. 2d 526-27:

"The Extradition Clause was intended to enable each state to bring offenders to trial as swiftly as possible in the state where the alleged offense was committed. . . . The purpose of the Clause was to preclude any state from becoming a sanctuary for

fugitives from justice of another state and thus 'balkanize' the administration of criminal justice among the several states. It articulated, in mandatory language, the concepts of comity and full faith and credit, found in the immediately preceding clause of Art. IV. The Extradition Clause, like the Commerce Clause, served important national objectives of a newly developing country striving to foster national unity. . . . In the administration of justice, no less than in trade and commerce, national unity was thought to be served by de-emphasizing state lines for certain purposes, without impinging on essential state autonomy.

Interstate extradition was intended to be a summary and mandatory executive proceeding derived from the language of Art. IV, § 2, cl. 2, of the Constitution. . . . The Clause never contemplated that the asylum state was to conduct the kind of preliminary inquiry traditionally intervening between the initial arrest and trial.

Near the turn of the century this Court, after acknowledging the possibility that persons may give false information to the police or prosecutors and that a prosecuting attorney may act 'either wantonly or ignorantly,' concluded:

'While courts will always endeavor to see that no such attempted wrong is successful, on the other hand, care must be taken that the process of extradition be not so burdened as to make it practically valueless. It is but one step in securing the presence of the defendant in the court in which he may be tried, and in no manner determines the question of guilt.' *In re Strauss* [197 U.S. 324 (1905)], at 332-33.' " (Citations omitted.)

In addition to Article IV, Section 2 of the Constitution and 18 U.S.C. § 3182, extradition in Maryland is governed by

the Uniform Criminal Extradition Act, enacted in 1937,[6] and now codified in the Maryland Annotated Code, Article 41, §§ 16-43.

Article 41, § 18 provides that the Governor cannot lawfully comply with a requisition for extradition unless it appears that the person is substantially charged with a crime against the laws of the demanding State by indictment or affidavit properly certified, and that he is a fugitive from justice of the demanding State. But an extradition requisition reciting that the accused is charged with a certain crime against the demanding State, and that he has become a fugitive from justice of that State, and accompanied by a certified copy of the indictment or affidavit, makes a *prima facie* case against the accused as an alleged fugitive from justice from that State. *Audler v. Kriss,* 197 Md. 362, 364 (1951).

Article 41, § 19 provides:

> "When a demand shall be made upon the Governor of this State by the executive authority of another state for the surrender of a person so charged with crime, the Governor may call upon the Attorney General or any prosecuting officer in this State to investigate or assist in investigating the demand, and to report to him the situation and circumstances of the person so demanded, and whether he ought to be surrendered."

Although there is no constitutional right to an executive hearing, *Bryson v. Warden, Baltimore City Jail,* 287 Md. 467, 469-70 (1980), such a hearing is held in Maryland as a matter of policy, *see Maryland Extradition Manual* (N. Rogers, ed., p. 23), and is conducted by a hearing officer appointed by the Attorney General. *See State ex rel. Zack v. Kriss,* 195 Md. 559 (1950). The hearing procedure is informal and the normal rules of evidence and procedure do

---

**6.** 1937 Md. Laws, Ch. 179. The Act has been adopted by all the States except Mississippi and South Carolina.

not apply. *Shields v. State,* 257 Md. 384, 390 (1970). If the accused appears without counsel, his rights are explained to him by the hearing officer. Although there is no formal transcript, the accused may present witnesses on his behalf, and testimony may be submitted by affidavit. Nevertheless, Article 41, § 34 severely limits the matters which may be inquired into at the hearing; that section provides:

> "The guilt or innocence of the accused as to the crime of which he is charged may not be inquired into by the Governor or in any proceeding after the demand for extradition accompanied by a charge of crime in legal form as above provided shall have been presented to the Governor, except as it may be involved in identifying the person held as the person charged with the crime."

Assuming the Governor decides to comply with the demand for extradition, and a warrant of arrest is subsequently signed and executed in conformity with Article 41, §§ 22-24, § 25 provides that:

> "No person arrested upon such warrant shall be delivered over to the agent whom the executive authority demanding him shall have appointed to receive him unless he shall be first taken forthwith before a judge of a court of record in this State, who shall inform him of the demand made for his surrender and of the crime with which he is charged, and that he has the right to demand and procure legal counsel; and if the prisoner or his counsel shall state that he or they desire to test the legality of his arrest, the judge of such court of record shall fix a reasonable time to be allowed him within which to apply for a writ of habeas corpus. When such writ is applied for, notice thereof, and of the time and place of hearing thereon, shall be given to the prosecuting officer of the county or the City of Baltimore in which the arrest is made and in which the accused is in custody, and to the said agent of the demanding state. If the application for

a writ of habeas corpus after an extradition hearing only, is denied by the trial court, the denial may be appealed to the Court of Special Appeals."

Upon application for a writ of *habeas corpus,* the scope of review is again severely limited. In *Michigan v. Doran, supra,* the Supreme Court held that "once the governor of the asylum state has acted on a requisition for extradition based on the demanding state's judicial determination that probable cause existed, no further judicial inquiry may be had on that issue in the asylum state." 439 U.S. at 290, 99 S. Ct. at 536, 58 L. Ed. 2d at 528. Rather the Court declared that:

"A governor's grant of extradition is prima facie evidence that the constitutional and statutory requirements have been met. . . . Once the governor has granted extradition, a court considering release on habeas corpus can do no more than decide (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive. These are historic facts readily verifiable."

439 U.S. at 289, 99 S. Ct. at 535, 58 L. Ed. 2d at 527.

And lately, in *Bryson v. Warden, Baltimore City Jail, supra,* our own Court of Appeals has stated, at 287 Md. 470:

"Our cases and those of our intermediate appellate court make clear that a habeas corpus hearing upon the petition of one against whom a warrant of rendition has been issued is in no way intended to test the guilt of the petitioner or even whether there is probable cause to believe he committed the alleged crime. The issuance of the warrant by the Governor of the asylum state raises a presumption that the accused is the fugitive wanted. It is sufficient to justify his arrest, detention, and delivery to the demanding state. In

order to rebut this presumption the accused must prove *beyond a reasonable doubt* either that he was not present in the demanding state at the time of the alleged offense or that he is not the person named in the warrant. Mere contradictory evidence is not sufficient. Upon proof of one or the other, he is entitled to be released." (Footnote and citations omitted.)

Having reviewed the constitutional and statutory basis for extradition, we are convinced that a governor's hearing is not a "critical stage" to which the Sixth Amendment's right to counsel extends. We reach this result because we think it clear that such a hearing is not a stage of the "adversary criminal proceedings" at which constitutional or other rights must be asserted or waived, or "where counsel's absence might derogate the accused's right to a fair trial." *United States v. Wade, supra,* 388 U.S. at 226, 87 S. Ct. at 1932, 18 L. Ed. 2d at 1149. As we have indicated, the scope of permissible inquiry is severely restricted throughout the extradition process. Article 41, §§ 18, 19 and 34, *Michigan v. Doran, supra,* and *Bryson v. Warden, Baltimore City Jail, supra,* combine to insure that neither the executive nor the judiciary of the asylum state may so much as consider — not to mention decide — matters touching upon the accused's guilt or innocence. Rather, the inquiry is confined to whether the alleged fugitive is in fact the one requested by the demanding state. Furthermore, it appears that the scope of permissible inquiry at the *habeas corpus* proceeding is for all intents and purposes coextensive with that at the Governor's hearing. Since both statutory and case law guarantee such a proceeding, we believe the provision of counsel at this stage is quite sufficient to safeguard the petitioner's right to due process of law.

We find that the law on this point in other jurisdictions confirms us in the decision we reach here. Although no cases have reached the United States Supreme Court in which the right to counsel at an extradition hearing has been in issue,[7]

7. Appellant cites Scott v. Illinois, 440 U.S. 367, 99 S. Ct. 1158, 59 L. Ed. 2d 383 (1979), and Gagnon v. Scarpelli, 411 U.S. 778, 93 S. Ct. 1756, 36 L.

the few decisions from lower courts which have considered the question have consistently denied the right.[8]

Accordingly, we hold that the Sixth Amendment of the United States Constitution does not confer a right to have the assistance of counsel at a governor's extradition hearing. Appellant's petition for a writ of *habeas corpus* was therefore properly denied.

*Judgment affirmed.*

*Appellant to pay the costs.*

---

Ed. 2d 656 (1973), as authority for his contention that the assistance of counsel at extradition hearings is constitutionally mandated, but these cases are inapposite. In Scott, *supra*, the Court held that the Sixth and Fourteenth Amendments require that no indigent criminal defendant be sentenced to imprisonment unless the State has afforded him the right to the assistance of appointed counsel, but do not require a State trial court to appoint counsel for a defendant who is charged with a statutory offense for which imprisonment is authorized but not imposed. And in Gagnon, *supra*, the Court held that the constitutional right to counsel applied to hearings on revocation of probation.

8. Rugg v. Burr, 402 P.2d 28 (Ariz. 1965); Cohen v. Warden, Montgomery County Detention Center, Rockville, Md., 252 F. Supp. 667, 671 (D. Md. 1966); Roberts v. Hocker, 456 P.2d 425 (Nev. 1969); Rutledge v. Preadmore, 21 Mich. App. 726, 176 N.W.2d 417 (1970); U.S. ex rel. Calhoun v. Twomey, 454 F.2d 326, 328 (7 Cir. 1971); Wertheimer v. State, 201 N.W.2d 383 (Minn. 1972); Seymour v. State, 21 Ariz. App. 12, 515 P.2d 39 (1973); Com. ex rel. Coleman v. Cuyler, 396 A.2d 394 (Pa. 1978); State v. Detter, 298 N.C. 604, 260 S.E.2d 567 (1979); Manley v. State, 410 N.E.2d 1338 (Ind. 1980).