Michael LAYTON, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 585S187.

Supreme Court of Indiana.

Oct. 27, 1986.

Susan K. Carpenter, Public Defender, Michael Hunter Freese, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Jody Cusson-Cobb, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Justice.

Petitioner was convicted of first degree murder, Ind.Code § 35–13–4–1 (Burns 1971) and sentenced to life imprisonment. In this appeal from the denial of post-conviction relief, we determine whether trial counsel's failure to produce evidence to establish that appellant's confession was involuntary constitutes ineffective assistance.[1]

Appellant and the victim, Russell McChristian, had a sexual relationship in the Indiana State Prison which was intermittently interrupted whenever one of them was on parole. The relationship was symbiotic; McChristian protected appellant and appellant supplied McChristian with prison contraband. McChristian had returned to the prison shortly before his death and apparently was vehemently opposed to appellant's relationship with another inmate, B.J. Appellant testified that McChristian approached him, armed with a knife, and threatened to kill him. Appellant promised to terminate his relationship with B.J.

The evening of June 6, 1971, there was a fire in McChristian's cell. Layton was chased by several armed inmates in the vicinity of McChristian's cell. Layton ran toward a prison officer and asked to be locked in a secure cell. McChristian was rushed to the hospital but died as a result of burns over 95% of his body. Layton was also taken to the hospital for burns on his arms. While appellant was on the stretcher he told the warden, "Warden, he made me do it. I didn't want to do it."

Between 1:30 and 2 a.m. Michael Carmin and Leo Commiskey, Indiana State Police officers, interrogated appellant at the hospital. Layton was advised of his constitutional rights and signed a waiver at 1:56 a.m. Layton then confessed to the police that he killed McChristian in self-defense. Fearful for his life, Layton collected empty jars and stored them in his locker. Another inmate in charge of supplies left a supply cabinet unlocked so Layton could obtain the gasoline he needed. After filling the jars with gas, Layton went to the cellblock and found McChristian lying on his bed in the locked cell. Layton threw one opened jar on McChristian, then ignited another jar and tossed it in the cell, too. Several days later Officer Carmin presented defendant with the transcribed statement and asked him to sign it. Appellant refused, stating he was on medication when he gave the statement and he now wanted to speak with his attorney.

The confession was admitted into evidence over appellant's objection that his confession was involuntary because he was on medication when he was interrogated by the police. At the suppression hearing, Officer Carmin testified that defendant appeared to be coherent, logical, and not affected by any medication. At this time the judge interceded:

Court: Of course, Mr. Transki, you haven't presented any type of evidence. The court will be willing to listen if you can show any type of medication you claim the defendant had. Outside of asking the sergeant whether or not he had any medication I don't know whether he had any medication or not, and what type.

---

**1.** Another issue raised in petitioner's brief is whether his intoxicated state at the time he gave his statement to the police rendered his confession involuntary and inadmissible. However, appellate review of this issue at this date is precluded by Rule P.C.1, Sec. 8, Ind.Rules of Procedure for Post-Conviction Remedies.

Mr. Transki: I think the court can assume if a man is taken to a hospital for treatment he is going to be given medication in the course of the treatment. Court: Well, the matter of medication and what it is I think would be very relevant and very material here. Can you present anything in regard to it? Mr. Transki: Not unless I would bring in the doctor that attended him. But I don't think it makes much difference, Your Honor, because I think this statement should not be admissible because there are too many inconsistencies in it.

On direct appeal, Layton argued that his confession was involuntary because he was under the influence of drugs when he gave his statement to the police. *Layton v. State* (1973), 261 Ind. 251, 301 N.E.2d 633. This Court found that "there is in the record no evidence from which one could conclude that if the drugs were taken or administered they were of the kind or the amount that would possibly produce an involuntary confession." *Id.*, 261 Ind. at 251, 301 N.E.2d at 635.

At a post-conviction hearing, evidence on the medication administered to appellant was presented. Dr. Melvin Gardner testified that on June 6, 1971, appellant was treated for first and second degree burns on both hands and forearms. At 10 p.m., Layton received a standard dosage of 100 milligrams of Demerol as treatment for his injuries. The effects of Demerol generally last four hours. Dr. Gardner testified that Demerol, in his expert opinion, "suppresses the pain centers, usually produces sleep, and it would cut down the upper levels of the brain." He testified that Demerol could impair judgment or the ability to understand, even though a person under the influence of Demerol would be able to answer questions and respond in an apparently coherent manner. Due to these effects, individuals who have received Demerol are not permitted to consent to surgery.

Gardner then narrowed his opinion to the facts of the case. He stated that administration of 100 milligrams of Demerol at 10 p.m. would affect appellant's ability to exercise his free will in executing a waiver of constitutional rights and would affect the voluntariness of a confession given before 2 a.m. However, the effect of Demerol dissipates over time; it reaches a peak and then gradually wanes. If administered at 10 p.m., the drug would begin to take effect at 10:30 p.m. and reach its peak at 10:45 p.m. Three hours and 56 minutes after the administration of Demerol, its effect would be minimal. Gardner testified that there would still be some residual effect, but that "it should very well be gone."

Attorney Donald Transki represented appellant at the trial and on direct appeal. As part of Transki's investigation for the case, he interviewed Dr. Gardner about the medication administered to Layton and its effects. Transki testified that he and the defendant concluded that the drug evidence was insignificant in terms of making a successful challenge to the confession's admissibility. He stated that they discussed having Gardner testify but determined not to subpoena him. When asked why he raised the voluntariness of the confession on direct appeal when he had not presented a factual record at trial, Transki responded, "Because we couldn't have made a factual determination at the trial and couldn't have proved our point at trial."

To succeed on an ineffective assistance of counsel claim appellant must satisfy the performance-prejudice standard enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Appellant must demonstrate that counsel's assistance fell below prevailing professional norms and that counsel's deficient performance not only prejudiced the defense but undermined the reliability and fairness of the proceeding. *Stanley v. State* (1985), Ind., 479 N.E.2d 1315. Under *Strickland*, this Court need not address the performance component when the appellant has not demonstrated the requisite prejudice, as in this case.

A professional error does not warrant setting aside the judgment if the attorney's error had no effect on the judgment.

*Strickland,* 466 U.S. at 691, 104 S.Ct. at 2067, 80 L.Ed.2d at 696. The prejudice component is not satisfied when the defendant shows only that counsel's error had some conceivable effect on the outcome of the proceeding. Prejudice is demonstrated when the defendant shows that there is a reasonable probability that, but for the counsel's errors, the result of the proceedings would have been different. A reasonable probability is one sufficient to undermine confidence in the outcome.

Even had trial counsel produced evidence at the suppression hearing of the nature, amount, and effect of the medication administered to Layton prior to his interrogation, the defense would not have sustained its burden to establish that the medication affected defendant's ability to give a voluntary confession. When appellant gave his confession to the police, the effect of the medication was minimal.

The judgment of the trial court is affirmed.

GIVAN, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.