## JOHNSON *v.* WARDEN OF THE MONTGOMERY COUNTY DETENTION CENTER

[No. 462, September Term, 1965.]

*Decided November 14, 1966.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, OPPENHEIMER and BARNES, JJ.

*John T. Bell* and *Charles W. Bell*, with whom were *Bell & Bell* on the brief, for appellant.

*David T. Mason, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General,* and *Leonard T. Kardy, State's Attorney for Montgomery County* on the brief, for appellee.

HAMMOND, C. J., delivered the opinion of the Court.

Steven Gary Johnson is sought by New Jersey as a fugitive charged with having committed a crime in that State. After a hearing upon the warrant of extradition issued by the Governor of New Jersey, Governor Tawes issued a warrant of rendition sending Johnson back to stand trial for the crime of housebreaking on September 5, 1965, and pursuant to Code (1957), Art. 41, § 25, Johnson was taken before Judge Anderson of the Circuit Court for Montgomery County and advised of his right to seek a writ of habeas corpus. A hearing then was held by Judge Anderson, at which Johnson's counsel produced six witnesses who testified that during the evening and night of September 4, all of September 5, and all of September 6 (Labor Day), 1965, Johnson was in or within a few miles of his apartment in Montgomery County. The State produced a policeman from the Town of Rio Grande, New Jersey, the location of the store into which Johnson allegedly broke. The policeman testified that on September 5, 1965, a Sunday, he was on routine patrol at about six o'clock in the evening when word reached him that a burglar alarm had gone off from the Shop-Rite Market in Rio Grande. When he arrived at the store he saw a man standing by a 1965 red Chevrolet car with a white top, bearing Maryland tags, at the rear of the building. He pointed out Johnson from the stand as the man he had seen in New Jersey, declaring that he had no doubts as to the identity. The officer testified that Johnson had showed him a draft card on which was the name Steven G. Johnson and had told him he worked as a

dry wall construction worker in Silver Spring. (Johnson testified that his last job prior to September 5, when he was unemployed, had been as a dry wall construction worker.) The policeman then released Johnson and an hour or so later arrested a man named McCook and a man named Clarke (who owned the red and white Chevrolet car), who were sharing a room at a nearby motel with, according to the motel register, a Steven Johnson.

The State also produced a Detective Sergeant of the Montgomery County police, who had known Johnson for some time, who testified that on September 10, 1965, at the Wheaton-Glenmont Station he told Johnson that his habeas corpus hearing would take place in the Silver Spring court on a named day and that Johnson replied that he had stopped smoking, and, pulling back his coat, added that he was getting heavy and "they wouldn't be able to identify him by that time in New Jersey."

Judge Anderson ruled that Johnson's evidence did no more than raise a conflict as to whether he was in New Jersey or in Montgomery County at the critical time of the commission of the crime. He denied the writ of habeas corpus because Johnson had not shown conclusively or beyond a reasonable doubt that he had not been in New Jersey when the police there said he was. As permitted by § 25 of Art. 41 of the Code (1965 Replacement Vol.), Johnson appealed.

He does not contend that he is not the individual New Jersey is seeking or that he is not charged in that State with an extraditable crime. His only contention is that the evidence at the hearing was sufficient to show that he was not a fugitive from New Jersey justice since it places him in Maryland at the time the crime was committed in New Jersey. This contention has two thrusts. First, Johnson says the statement to the detective as to his increase in weight and the consequent inability of the New Jersey authorities to identify him amounted to a confession and was inadmissible because the State failed to meet its preliminary burden of establishing that it was freely and voluntarily made, and second, that it is a violation of his right to due process of law to require him to show beyond a reasonable doubt that he was not in the demanding State at the time of the offense with which he is charged.

The answer to the last thrust is that the decisions of the Supreme Court and this Court have established fully that it is not unconstitutional to require one resisting extradition to show conclusively or beyond a reasonable doubt that he was not in the demanding State at the critical time. The warrant issued by the Governor of the asylum State raises a presumption that the accused is the fugitive wanted and is sufficient to justify his arrest, detention and delivery to the agent of the demanding State unless he rebuts the presumption by showing beyond a reasonable doubt that he is not a fugitive. Only if he can show this conclusively is he entitled to his release. *South Carolina v. Bailey*, 289 U. S. 412, 77 L. Ed. 1292; *Audler v. Kriss*, 197 Md. 362; *State v. Murphy*, 202 Md. 650; *Koprivich v. Warden*, 234 Md. 465. These cases also establish that mere contradictory evidence—and the number of witnesses on one side or the other is not conclusive—on the question of presence in or absence from the demanding State will not overcome the presumption.

In *South Carolina v. Bailey, supra,* twenty witnesses put the accused in the asylum State at the critical times and twelve put him in the demanding State. The Supreme Court said (289 U. S. at 419) : "The record presents an irreconcilable conflict of evidence. It is not possible to say with certainty where the truth lies," and concluded (pp. 421-422 of 289 U. S.) :

> "Considering the Constitution and statute and the declarations of this Court, we may not properly approve the discharge of the respondent unless it appears from the record that he succeeded in showing by clear and satisfactory evidence that he was outside the limits of South Carolina at the time of the homicide. Stated otherwise, he should not have been released unless it appeared beyond reasonable doubt that he was without the State of South Carolina when the alleged offense was committed and, consequently, could not be a fugitive from her justice.
>
> "The record discloses only a conflict of evidence; the requirement which we have indicated has not been met; and the challenged judgment must be reversed."

*Koprivich* put it in this wise (p. 467 of 234 Md.) :

> "Moreover, an extradition hearing under writ of *habeas corpus* is not a proceeding in which an alibi (or other question of fact affecting the guilt or innocence of the accused except insofar as his identity is involved) may be inquired into."

There are a number of answers to Johnson's argument that his statement to the Montgomery County detective was inadmissible. A habeas corpus proceeding is generally held to be civil in nature rather than criminal even though it is brought in behalf of one charged with crime, and the office of the writ is not to determine guilt or innocence but the legality of the restraint. 25 Am. Jur. *Habeas Corpus* § 12; 39 C. J. S. *Habeas Corpus* § 1; *United States v. Wiman* (5th Cir.), 304 F. 2d 53, 64, *cert. denied*, 372 U. S. 915 and 924; *People, ex rel. Hackler v. Lohman* (Ill.), 160 N. E. 2d 792, *cert. denied*, 361 U. S. 963. The rule of criminal cases that the State must preliminarily establish the voluntariness of a confession would not seem to be constitutionally requisite in a proceeding merely to determine the whereabouts of the accused at a given time. Ordinarily, the strictness of the trial rules of evidence is not applicable in extradition proceedings. See 1 Wigmore, *Evidence* (3d ed.—1940), § 4 (6); *Munsey v. Clough*, 196 U. S. 364, 372; *Koprivich v. Warden, supra*, at 468. The Supreme Court of Illinois in the *Lohman* case, *supra*, applied civil rules to an extradition proceeding, and said (160 N. E. 2d at 796) : "Since the only purpose of extradition is the return of the fugitive to the place of the alleged offense, his constitutional rights, other than the present right to personal liberty, are not involved." See also *Sas v. State of Maryland* (4th Cir.), 334 F. 2d 506, 515, dealing with the constitutionality of the civil procedures in a proceeding under the Defective Delinquent Act, where the Court said :

> "* * * repeated decisions of the Supreme Court have put it beyond the range of further debate that the 'due process' clause of the fourteenth amendment has not the effect of imposing upon the states any particular

> form or mode of procedure, so long as the essential
> rights of notice and a hearing, or opportunity to be
> heard, before a competent tribunal are not interfered
> with."

Judge Anderson did not refer to, much less rely on, the challenged statement in deciding that there was credible persuasive testimony sufficient to at least create a conflict as to Johnson's presence in New Jersey. He relied, as we think he had a right to do, on the New Jersey policeman's positive identification, buttressed by the draft card exhibited to him and Johnson's admission from the stand that at the time of the crime he classified himself as a dry wall construction worker, which was what the man the policeman accosted said he was.

Even if it be assumed for the purpose of decision only that the same tests are applicable to Johnson's statement to the detective as would be applicable in a trial to determine his guilt or innocence of the crime for which he is sought to be extradited, the statement was admissible below.[1] We held in *Stewart v. State*, 232 Md. 318, 323, that an admission which is "significantly incriminating but short of a confession must, like a confession, have been made voluntarily and without improper inducement to be evidence against the accused." We went on to analyze the earlier cases in Maryland and in other state and federal courts and held that an admission is properly received without a preliminary showing by the State of its voluntariness, provided the record shows that it was in fact voluntary.

In *Stewart* a federal narcotics agent testified he saw Stewart for a moment after his arrest in the office of a captain of the Baltimore police, identified himself as an agent, and asked if Stewart remembered making a sale of narcotics to him or "getting the narcotics to him" on October 9, and that Stewart said "Yes." There was a similar short statement to the arresting officer. We held the answers were admissible statements without a preliminary showing that they were voluntary, saying (232 Md. 325-26) :

---

1. We do not, of course, decide the issue of whether the statement would be admissible in a trial in New Jersey on the issue of guilt or innocence.

"There was no contention below and there is none here that Stewart's replies to the agent and the policeman that he had sold the heroin were not made entirely voluntarily, or were improperly induced. The colloquies between Stewart and the agent and the policeman, respectively, almost demonstrate that Stewart's statements were spontaneous, and casually given.

\* \* \*

"Since the statements of Stewart were voluntarily made, without improper inducement, they were admissible in evidence against him."

In the instant case it is even more apparent that Johnson's statement was voluntary. The detective did not ask him anything; he told him when and where his extradition hearing would be held and Johnson volunteered an obviously spontaneous rejoinder. The objection below to the admission of the statement was not that it was not voluntarily made but that it had no probative force because it was obviously meant as a joke.

Even if it again be assumed for the purpose of decision only that the rules of a criminal trial were applicable, neither *Escobedo v. Illinois*, 378 U. S. 478, 12 L. Ed. 2d 977, nor *Miranda v. Arizona*, 384 U. S. 436, 16 L. Ed. 2d 694, would help Johnson. He did not, as *Escobedo* made a prerequisite to the inadmissibility of a confession, ask for and be refused a lawyer before he made response to the detective—indeed, he seemingly already then had a lawyer. *Johnson v. New Jersey*, 384 U. S. 719, 16 L. Ed. 2d 882, made the more exacting requirements of *Miranda*, that an accused in custody be advised of a right to counsel and of a right to remain silent if his confession or admission is to be evidence against him, applicable only to trials commencing after June 13, 1966. The trial below began before that date.

Both thrusts of Johnson's contention must be rejected.

*Order affirmed, with costs.*