### SOLOMON *v.* WARDEN, BALTIMORE CITY JAIL

[No. 145, September Term, 1969.]

*Decided December 29, 1969.*

298

The cause was argued before HAMMOND, C. J., and MC-WILLIAMS, FINAN, SINGLEY and DIGGES, JJ.

*John P. Greenspan* for appellant.

*James L. Bundy, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Edward*

*F. Borgerding, Assistant Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Robert C. Stewart, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

McWILLIAMS, J., delivered the opinion of the Court.

Appellant (Solomon) urges us to remand this case to the Baltimore City Court "with instructions to grant" his petition for the writ of habeas corpus, which the trial judge, Watts, J., on 2 April 1969, after a hearing, denied. Since we are obliged to affirm the action of Judge Watts, Solomon must now be delivered to the agent of the Commonwealth of Virginia, there to be taken and "dealt with according to Law." The facts, as related to the trial judge by counsel, seem not to be in dispute.

On 28 August 1968 a clothing store in Colonial Heights, Virginia was burglarized. Merchandise worth about $5,000 was taken. Around midnight of the same day Trooper D. E. Stillwell, of the Virginia State Police, at the time unaware of the burglary, noticed a vehicle on Interstate Route 95 which "looked suspicious to him." He stopped it and asked the occupants to identify themselves. They were, according to the trooper, William Banning, Woodrow Graham and Elwood Blackstone. The car, driven by Banning, was owned by Solomon's wife. The trooper observed "all these clothes" in the back of the car but he allowed them to proceed.

Within a day or so the trooper saw a news item about the burglary and soon thereafter he gave the authorities at Colonial Heights the information he had obtained. Two members of the Colonial Heights police force went to Baltimore on 30 August and obtained a fugitive warrant for the arrest of "Woodrow Graham." No arrest was made but they did question Mrs. Solomon who told them that, on the evening of 27 August, she had loaned her car to Banning who, she said, was a neighbor and an old friend. They searched her house but nothing was found.

A conclusion was reached some time during the succeeding four months that the "Woodrow Graham" seen by Trooper Stillwell on 27-28 August was actually Solomon. The Governor of Virginia issued an extradition warrant on 3 February 1969. The Governor of Maryland designated Assistant Attorney General Joseph D. Buscher to preside at the extradition hearing which was held in Annapolis on 18 March. Trooper Stillwell, who was present at the hearing, identified Solomon as one of the three men he had seen in Mrs. Solomon's automobile on Interstate Route 95 in Virginia on the night of 27-28 August. Lt. Norman, of the Colonial Heights Police Department testified that a yellow wool glove found in the trunk of Mrs. Solomon's car matched one found near the scene of the burglary. Following the signing of the rendition warrant by the Governor of Maryland Solomon applied for the writ of habeas corpus pursuant to Code, Art. 41, § 25 (1965 Repl. Vol.).

Solomon did not testify at the hearing in the court below. He has offered no evidence in respect of his whereabouts at the time of the burglary. In this Court Solomon claims first, that it was not shown he was in the demanding state at the time of the crime, inasmuch as the identification by Trooper Stillwell was made pursuant to an unduly suggestive and thus constitutionally impermissible photographic "lineup;" he next suggests that the writ should be granted because "[t]he stopping and subsequent search of * * * [his wife's] automobile * * * violated the fourth and fourteenth amendments."

The issuance of a warrant of rendition by the Governor of the asylum state raises a presumption that the accused is the fugitive wanted and it is sufficient to justify his arrest, detention and delivery to the demanding state. See, e.g., Johnson v. Warden, 244 Md. 384, 388 (1966); Koprivich v. Warden, 234 Md. 465, 468-69 (1964), and the cases therein cited. In order to rebut the presumption the accused must prove beyond a reasonable doubt either that he was not present in the demand-

ing state at the time of the alleged offense or that he was not the person named in the warrant, and upon proof of the one or the other he is entitled to be released. *Id.* Moreover, in this kind of habeas corpus proceeding "[t]he guilt or innocence of the accused may not be inquired into * * * except as it may be involved in identifying the person * * * charged with the crime." Code, Art. 41, § 34 (1965 Repl. Vol.). It should be noted also that the presumption must be rebutted by "overwhelming" evidence, *Mason v. Warden,* 203 Md. 659, 661 (1953), thus "[m]ere contradictory evidence on the question of presence in or absence from the state demanding the accused is not sufficient * * *." *Koprivich v. Warden, supra,* at 469.

Applying these principles to the case at bar we reach, without difficulty, the conclusion that Judge Watts' order should be affirmed. Solomon's argument in respect of the constitutionality of the identification procedure has no application to a proceeding of this nature. A similar contention relating to the constitutionality of a confession was advanced on appeal from a denial of a writ of habeas corpus in *Johnson v. Warden, supra,* and was rejected. Quoting from *People, ex rel. Hackler v. Lohman,* 160 N.E.2d 792 (Ill. 1959), *cert. denied,* 361 U. S. 963 (1960), Chief Judge Hammond, for the Court, said in Johnson:

> " 'Since the only purpose of extradition is the return of the fugitive to the place of the alleged offense, his constitutional rights, other than the present right to personal liberty, are not involved.' " *Id.* at 389.

Assuming, however, for the sake of argument, that Solomon's contention had application in the instant case, we think it is clear that our conclusion would in nowise be different because Solomon has offered no evidence which would support a finding that the recognition of his photograph was the product of impermissible suggestion. We think it is clear also that the trooper's iden-

tification at the hearing in Annapolis had an independent basis inasmuch as he appears to have had substantial opportunity to observe Solomon when he stopped the "suspicious" vehicle. *See United States v. Wade,* 388 U. S. 218, 240, 242 (1967).

Solomon's argument in respect of the constitutional legality of the stopping of his wife's vehicle by the trooper also has no application in the case before us. No proof was offered in the court below to show that the stopped vehicle had been searched or that any evidence resulting from the alleged search was introduced at the extradition hearing.

We think it comes only to this—the bald assertion by Solomon's attorney that he was not present in the demanding state at the time of the commission of the burglary; that is not enough to rebut the presumption that he is the wanted fugitive.

*Order affirmed with costs.*