DAVID HAROLD UTT A/K/A HAROLD DAVID UTT V.
STATE OF MARYLAND

[No. 57, September Term, 1981.]

*Decided April 5, 1982.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*George E. Burns, Jr., Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Ann E. Singleton, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court. ELDRIDGE and DAVIDSON, JJ., dissent. ELDRIDGE, J., filed a dissenting opinion at page 289 *infra,* in which DAVIDSON, J., concurs.

We are here presented with two questions which we shall decide adversely to the petitioner, David Harold Utt. Hence, we shall affirm the judgment of the Court of Special Appeals in *Utt v. Warden, Balto. City Jail,* 48 Md. App. 486, 427 A.2d 1092 (1981).

The issues before us are (1) whether, as an indigent, Utt was unconstitutionally denied counsel at the Governor's hearing to determine whether a warrant of rendition should be issued, and (2) whether under Maryland Code (1957, 1976 Repl. Vol., 1977 Cum. Supp.) Art. 27A, § 4 (b) (4), the Public Defender was obliged to represent him at that hearing. We granted Utt's petition for the writ of certiorari in order that we might decide the important public policy question contained in the first issue. On our own motion we then directed the parties to brief and argue the second issue which had not been presented to the Court of Special Appeals.

It is a fact that Utt requested the Public Defender to provide him with counsel at the Governor's rendition hearing. The Public Defender declined to do so, however, based upon the Attorney General's earlier interpretation of the statute governing the Public Defender.

Utt was sought on theft charges by authorities of the State of Indiana. A hearing on the Indiana Governor's request for the rendition of Utt was held by the Governor of Maryland's representative on January 24, 1980, pursuant to Maryland

Code (1957) Art. 41, § 19.[1] The Governor directed that Utt be turned over to Indiana. Utt then petitioned the Baltimore City Court for the writ of habeas corpus in accordance with Code (1957, 1976 Repl. Vol.) Art. 41, § 25. He was represented by the Public Defender at that hearing. The trial judge denied the petition and remanded Utt to the custody of the Warden of the Baltimore City Jail pending extradition. An appeal to the Court of Special Appeals followed.

### i Right to counsel at the Governor's rendition hearing

Consistent with the analysis undertaken by each party here and with that previously undertaken by the Court of Special Appeals, the proper focus in the resolution of Utt's contentions is the fundamental issue of what constitutes a "critical stage" in a criminal prosecution. The litigation incident to this determination is voluminous because of the increased emphasis on the accused's constitutional right to counsel. As a general proposition, courts have deemed the assistance of counsel an indispensable and basic right whenever a particular stage or proceeding in the criminal justice process qualifies as "critical."

The right to the assistance of counsel provided by the Sixth and Fourteenth Amendments to the United States Constitution is firmly embedded in the law relative to criminal prosecution and procedure. *See Argersinger v. Hamlin,* 407 U.S. 25, 92 S. Ct. 2006, 32 L. Ed. 2d 530 (1972), and *Gideon v. Wainwright,* 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963). A similar right is set forth in Maryland Declaration of Rights, Art. 21. Although that particular provision appears in our Constitution of 1867, this same type of provision can be found in each of our Constitutions since 1776.

---

1. Maryland's version of the Uniform Criminal Extradition Act is contained in Code (1957, 1976 Repl. Vol.) Art. 41, §§ 16-43.

Thus, the constitutional right to counsel in Maryland is older than that under the Constitution of the United States.

Equally fundamental is the procedural right to the appointment of an attorney when a defendant is financially unable to retain private counsel. *See Thompson v. State,* 284 Md. 113, 122-23, 394 A.2d 1190 (1978), and *State v. Renshaw,* 276 Md. 259, 264-65, 347 A.2d 219 (1975). The underlying policy, in a nutshell, is that "essential fairness is lacking if an accused cannot put his case effectively in court," and that the accused most likely will be unable to present an effective defense without the aid of counsel. *Renshaw,* 276 Md. at 265; *see Powell v. Alabama,* 287 U.S. 45, 66-68, 72, 53 S. Ct. 55, 77 L. Ed. 158 (1932).

Necessarily precedent to the determination of whether the Governor's rendition hearing is a "critical stage," which would require the assistance of counsel, is an examination of the nature of that hearing. Counsel have correctly characterized the hearing as a summary proceeding, one which is informal. *See, e.g., Cohen v. Warden, Montgomery Co. Deten. Ctr., Rockville, Md.,* 252 F. Supp. 666, 671-72 (D. Md. 1966); *Koprivich v. Warden,* 234 Md. 465, 467-69, 200 A.2d 49 (1964); and *Willin v. Sheriff,* 201 Md. 667, 669, 95 A.2d 87 (1953). The normal rules of evidence applicable to criminal procedure do not apply. *United States v. Flood,* 374 F.2d 554, 558 (2d Cir. 1967) (citing *Johnson v. Warden,* 244 Md. 384, 389, 223 A.2d 584 (1966)); *Shields v. State,* 257 Md. 384, 390, 263 A.2d 565 (1970); and *Koprivich,* 234 Md. at 468. The hearing is not designed to test the guilt or innocence of the accused. *Solomon v. Warden,* 256 Md. 297, 301, 260 A.2d 68 (1969); *Johnson,* 244 Md. at 389-91; and *State v. Murphy,* 202 Md. 650, 651, 655, 96 A.2d 473, *cert. denied,* 346 U.S. 824 (1953). Also not properly cognizable at an extradition hearing are issues such as motions for suppression, *Thomeczek v. Bray,* 198 Colo. 341, 343, 600 P.2d 66 (1979); *Commonwealth v. Glavin,* 354 Mass. 69, 73, 235 N.E.2d 547 (1968), and delay in indictment and extradition as affecting the right to a speedy trial, *Shoemaker v. Sheriff,* 258 Md. 129, 131-32, 265 A.2d 260 (1970). In fact, although the

Governor as a matter of policy normally holds a rendition hearing, there is no constitutional right to a hearing before him.[2] *Haynes v. Sheriff of Wash. Co.,* 253 Md. 278, 280-81, 252 A.2d 807 (1969), and *Willin,* 201 Md. at 669 (citing *Ex parte Colier,* 140 N.J. Eq. 469, 55 A.2d 29 (1947), *cert. denied,* 333 U.S. 829 (1948)).

The policy reason for the summary approach to extradition is the favored status of the fugitive's prompt return to the place from whence he came. *Flood,* 374 F.2d at 556. The Extradition Clause, U.S. Const. art. IV, § 2, cl. 2, was intended to enable each state to bring offenders to trial as swiftly as possible in the state where the alleged offense was committed. *Michigan v. Doran,* 439 U.S. 282, 287, 99 S. Ct. 530, 58 L. Ed. 2d 521 (1978). Since extradition was intended to be a summary and mandatory executive proceeding, the Clause "never contemplated that the asylum state was to conduct the kind of preliminary inquiry traditionally intervening between the initial arrest and trial." 439 U.S. at 288. For general discussion regarding extradition, see Annot., 51 A.L.R. 797, 800-11 (1927).

*Powell,* 287 U.S. 45; *Gideon,* 372 U.S. 335; and *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), essentially signalled the increasing recognition accorded the assistance of counsel. The importance of counsel has been acknowledged repeatedly. *See, e.g., Gideon,* 372 U.S. at 344-45, and *Powell,* 287 U.S. at 68-69.

Consistent with this emerging doctrine, the Supreme Court began to structure its examination of right-to-counsel cases according to whether a "critical stage" was involved. Thus, in *Hamilton v. Alabama,* 368 U.S. 52, 53-54, 82 S. Ct. 157, 7 L. Ed. 2d 114 (1961), the Court held that under Alabama law an arraignment was a critical stage in a criminal proceeding. The Alabama code at that time required that if the defense of insanity were not pleaded at

---

2. Current practice calls for a designated representative of the Governor, usually an Assistant Attorney General, to hold the hearing. That representative then makes his recommendations to the Governor as a result of the hearing. In a less busy age Governors of Maryland customarily held the hearings themselves.

arraignment, the opportunity to do so was lost. Counsel was mandated because of the danger that the unwary accused would inadvertently lose strategic defenses. The same reasoning appeared in *White v. Maryland,* 373 U.S. 59, 60, 83 S. Ct. 1050, 10 L. Ed. 2d 193 (1963), where the Court held a preliminary hearing in Maryland to be a critical stage of the proceedings because the defendant's plea of guilty, which was made at the preliminary hearing when he had no attorney, was introduced into evidence against him at his ultimate trial. *Cf. Pointer v. Texas,* 380 U.S. 400, 402, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965) (Preliminary hearing where accused was not required to enter a plea was not necessarily a critical stage.); *Fugate v. Gaffney,* 313 F. Supp. 128, 134-35 (D. Neb. 1970), *aff'd,* 453 F.2d 362 (8th Cir. 1971), *cert. denied,* 409 U.S. 888 (1972) (Arraignment was not a critical stage under state law where accused made no incriminating statements and entered a plea of not guilty.); *Fabian v. State,* 235 Md. 306, 319, 201 A.2d 511, *cert. denied,* 379 U.S. 869 (1964); *Lauder v. State,* 233 Md. 142, 145, 195 A.2d 610 (1963); and *Arrington v. Warden,* 232 Md. 672, 674-75, 195 A.2d 38 (1963). These three Maryland decisions distinguished *White,* finding that the preliminary hearing was not a critical stage under the circumstances of those cases since no adverse admissions or anything of that sort had been involved.

In *Anonymous v. Baker,* 360 U.S. 287, 79 S. Ct. 1157, 3 L. Ed. 2d 1234 (1959), appellants had been found in contempt for refusing to answer pertinent questions put to them as witnesses summoned in a state judicial inquiry into alleged improper practices at the local bar. The sole issue before the Court was

> "whether this conviction offended the Due Process Clause of the Fourteenth Amendment to the Federal Constitution by reason of the fact that the justice in charge of the Inquiry had required counsel retained by appellants to remain outside the hearing room while they were being interrogated, even though he expressed his readiness to suspend

the course of questioning whenever appellants wished to consult with counsel." 360 U.S. at 288.

Justice Harlan said for the Court:

"To [declare this policy unconstitutional] would not only necessitate our ignoring the weighty considerations which support New York's policy, but would require us to limit state power in this area of investigation far beyond anything indicated by this Court's past 'right to counsel' decisions under the Fourteenth Amendment. Although we have held that in state criminal proceedings, which these are not, *Matter of M. Anonymous v. Arkwright,* [5 A.D.2d 790, 170 N.Y.S.2d 535, *leave to appeal denied,* 4 N.Y.2d 676, 173 N.Y.S.2d 1025, 149 N.E.2d 538 (1958)], a defendant has an unqualified right to be represented at trial by retained counsel, *Chandler v. Fretag,* 348 U. S. 3, we have not extended that right to the investigation stages of such proceedings. See *Cicenia v. LaGay,* 357 U. S. 504; see also *Crooker v. California,* 357 U. S. 433. Again, while it has been decided that there is a constitutional right to counsel in a criminal contempt proceeding, growing out of a state investigation, conducted before a judge sitting as a 'One Man Grand Jury,' *In re Oliver,* 333 U. S. 257, we have held that a witness examined in a state investigation conducted in private is not constitutionally entitled to the assistance of counsel while being interrogated. *In re Groban,* 352 U.S. 330." *Id.* at 294-95.

In *United States v. Wade,* 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967), Justice Brennan said for the Court:

"[T]he principle of *Powell v. Alabama* and succeeding cases requires that we scrutinize *any* pretrial confrontation of the accused to determine whether the presence of his counsel is necessary to preserve the defendant's basic right to a fair trial as

affected by his right . . . to have effective assistance of counsel at the trial itself. It calls upon us to analyze whether potential substantial prejudice to defendant's rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice." 388 U.S. at 227 (emphasis in original).

Accordingly, adversary safeguards are not necessary where an informal procedure is justified not only by the lesser consequences of a particular determination, but also by the nature of the determination itself. *Gerstein v. Pugh,* 420 U.S. 103, 120-21, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975). For example, the use of an informal procedure for a probable cause hearing "does not require the fine resolution of conflicting evidence that a reasonable-doubt or even a preponderance standard demands . . . ." 420 U.S. at 121. The Court stated, "Because of its limited function and its nonadversary character, the probable cause determination is not a 'critical stage' in the prosecution that would require appointed counsel." *Id.* at 122. Citing *Coleman v. Alabama,* 399 U.S. 1, 90 S. Ct. 1999, 26 L. Ed. 2d 387 (1970), and *Wade,* 388 U.S. at 226-27, the Court went on to say that it "has identified as 'critical stages' those pretrial procedures that would impair defense on the merits if the accused [were] required to proceed without counsel." 420 U.S. at 122.

An additional aspect of the "critical stage" analysis properly considers the effect of the Sixth Amendment relative to the right to counsel where the accused is threatened with a loss of liberty. In *Argersinger,* 407 U.S. at 40, the Court held that in cases where the accused is charged with a misdemeanor which "end[s] up in the actual deprivation of a person's liberty, the accused will receive the benefit of 'the guiding hand of counsel' so necessary when one's liberty is in jeopardy." Subsequently, in *Scott v. Illinois,* 440 U.S. 367, 373-74, 99 S. Ct. 1158, 59 L. Ed. 2d 383 (1979), the Court held "that *Argersinger* did indeed delimit the constitutional right to appointed counsel in state criminal proceedings." It stated, "[T]he Sixth and Fourteenth Amendments . . .

require only that no indigent criminal defendant be sentenced to a term of imprisonment unless the State has afforded him the right to assistance of appointed counsel in his defense." "[T]he fact that a proceeding will result in loss of liberty does not *ipso facto* mean that the proceeding is a 'criminal prosecution' for purposes of the Sixth Amendment. Nor does the fact that confinement will be imposed in the first instance as a result of that proceeding make it a 'criminal prosecution,'" thus transforming it into a "critical stage." *Middendorf v. Henry,* 425 U.S. 25, 37, 96 S. Ct. 1281, 47 L. Ed. 2d 556 (1976). The Court further said in *Middendorf* that *In re Gault,* 387 U.S. 1, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967), and *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973), "together . . . surely stand for the proposition that even in the civilian community a proceeding which may result in deprivation of liberty is nonetheless not a 'criminal proceeding' within the meaning of the Sixth Amendment if there are elements about it which sufficiently distinguish it from a traditional civilian criminal trial." 425 U.S. at 38.

Based upon the distinctions between criminal trials and less formal proceedings, the Court in *Middendorf* held that no Sixth Amendment right to counsel obtains in a summary court-martial since such a proceeding is not a "criminal prosecution" within the meaning of the Sixth Amendment. *Id.* at 42, 48. Discussing *Gagnon* at length, the Court cited significant parallels between a summary court-martial and a probation revocation proceeding. It noted that conviction of "unauthorized absence," the offense at issue in *Middendorf,* "would likely have no consequences for the accused beyond the immediate punishment meted out by the military, unlike conviction for such civilian misdemeanors as vagrancy or larceny which would carry a stamp of 'bad character' with conviction." 425 U.S. at 39. Based on its discussion in such cases as *Gagnon* and *Gault,* and on considerations peculiar to the military, the Court declined to apply *Argersinger* in a mechanical fashion. 425 U.S. at 36-37. It further noted:

"[A] summary court-martial is procedurally quite different from a criminal trial. In the first place, it is not an adversary proceeding. Yet the adversary nature of civilian criminal proceedings is one of the touchstones of the Sixth Amendment's right to counsel which we extended to petty offenses in *Argersinger v. Hamlin,* 407 U.S. 25 (1972)." *Id.* at 40-41.

Finally, the Court observed that a summary court-martial functions to exercise justice promptly for relatively minor offenses under a simple form of procedure, and involves less severe penalties upon conviction. *Id.*

Underlying much of the Court's reasoning in *Middendorf* was that which the Court expressed in *Gagnon.* In the latter case Justice Powell said for the Court:

"[W]e think that the Court of Appeals erred in accepting respondent's contention that the State is under a constitutional duty to provide counsel for indigents in all probation or parole revocation cases. While such a rule has the appeal of simplicity, it would impose direct costs and serious collateral disadvantages without regard to the need or the likelihood in a particular case for a constructive contribution by counsel. In most cases, the probationer or parolee has been convicted of committing another crime or has admitted the charges against him. And while in some cases he may have a justifiable excuse for the violation or a convincing reason why revocation is not the appropriate disposition, mitigating evidence of this kind is often not susceptible of proof or is so simple as not to require either investigation or exposition by counsel." 411 U.S. at 787.

The Court stated that "due process is not so rigid as to require that the significant interests in informality, flexibility, and economy must always be sacrificed." *Id.* at 788; *cf. Douglas v. California,* 372 U.S. 353, 354-57, 83 S. Ct.

814, 9 L. Ed. 2d 811 (1963) (A decision on the merits of an indigent's appeal as of right without the benefit of counsel discriminates between rich and poor, and thus violates the Fourteenth Amendment.).

The following cases illustrate what constitutes a "critical stage": *Baxter v. Palmigiano,* 425 U.S. 308, 314-15, 96 S. Ct. 1551, 47 L. Ed. 2d 810 (1976) (Prison inmates have no right to either retained or appointed counsel in disciplinary proceedings.); *Ross v. Moffitt,* 417 U.S. 600, 609-11, 94 S. Ct. 2437, 41 L. Ed. 2d 341 (1974) (Due process does not require appointment of counsel for a discretionary appeal to a state supreme court.); *United States v. Ash,* 413 U.S. 300, 311-15, 318-19, 321, 93 S. Ct. 2568, 37 L. Ed. 2d 619 (1973) (The Sixth Amendment does not grant an accused the right to have counsel present when the Government conducts a postindictment photographic display, which contains a picture of the accused, for the purpose of allowing a witness to attempt an identification of the offender. A pretrial event constitutes a "critical[ stage" when the accused "require[s] aid in coping with legal problems or assistance in meeting his adversary.")]; *Kirby v. Illinois,* 406 U.S. 682, 688-90, 92 S. Ct. 1877, 32 L. Ed. 2d 411 (1972) (A post-indictment lineup is a critical stage of a criminal prosecution, but the right to counsel does not attach to a lineup before any charges have been brought.); *Coleman,* 399 U.S. at 7-10 (Alabama preliminary hearing is a critical stage in that state's criminal process.); *Mempa v. Rhay,* 389 U.S. 128, 134-37, 88 S. Ct. 254, 19 L. Ed. 2d 336 (1967) (Sentencing, even if deferred, is a critical stage.); *Tully v. Scheu,* 607 F.2d 31, 35-36 (3d Cir. 1979) (New Jersey sentence reduction hearing is a critical stage.); *Hollis v. Smith,* 571 F.2d 685, 691-92 (2d Cir. 1978) (Defendant has no right to counsel at a psychiatric examination which is incident to the determination of punishment for a sex offender.); *Heryford v. Parker,* 396 F.2d 393, 396 (10th Cir. 1968) (Counsel required for involuntary commitment to state institution.); *State v. Caruthers,* 110 Ariz. 345, 519 P.2d 44, 46 (1974) (Since a coroner's inquest is neither a trial nor a part of a criminal proceeding, a defendant is not entitled as a matter of

constitutional right to have appointed counsel represent him at the inquest. No reason suggests that "due process would require that he be given the right to cross-examine or confront the witnesses at the inquest."); *State v. Carr,* 172 Conn. 458, 471-73, 374 A.2d 1107 (1977) (Ex parte fixing of bond on the issuance of a bench warrant for the defendant's arrest was not a critical stage of trial requiring the presence of the defendant's attorney.); *Headen v. United States,* 373 A.2d 599, 600-01 (D.C. 1977) (Defendant's Sixth Amendment right to counsel was violated when, without waiver by defendant, his attorney was not present when the jury returned its verdict.); *Porter v. State,* 354 So. 2d 470, 471 (Dist. Ct. App. Fla. 1978) (Presentence investigation interview with probation and parole commission is not a critical stage of the criminal proceedings.); *State v. Roach,* 223 Kan. 732, 737-38, 576 P.2d 1082 (1978) (Polygraph examination where counsel had accompanied the accused to the door of the examination room was not a critical stage of the proceedings.); *Wilson v. State,* 284 Md. 664, 669-71, 399 A.2d 256 (1979) (Accused has right to counsel on direct appeal of criminal conviction.); *Wood v. Director,* 243 Md. 731, 732-33, 223 A.2d 175 (1966) (No right in a Maryland defective delinquency proceeding to have an attorney present at the time of an individual's mental examination at Patuxent Institution because the proceeding is civil in nature.); *People v. Settles,* 46 N.Y.2d 154, 165, 385 N.E.2d 612, 412 N.Y.S.2d 874 (1978) (Court order of removal is a critical stage of the proceedings.); and *Lief v. Hynes,* 98 Misc. 2d 817, 414 N.Y.S.2d 855, 860 (1979) (Quoting *United States v. Mandujano,* 425 U.S. 564, 581, 96 S. Ct. 1768, 48 L. Ed. 2d 212 (1976), the court held there is no constitutional right to counsel in the grand jury room.).

In *Cohen,* 252 F. Supp. 666, Chief Judge Thomsen said:

"It has . . . been held that there is no right to have counsel appointed to represent the fugitive at an extradition hearing. Bagley v. State of Maryland, D.Md., Winter, J., Civil Action 16518 (1965), appeal dismissed as frivolous, 4 Cir., No. 10268 (1966);

Bagley v. Warden, Criminal Court of Baltimore City, Foster, J., Daily Record, February 19, 1964; Rugg v. Burr, 1 Ariz.App. 280, 402 P.2d 28 (1965)." *Id.* at 671.

This is in accord with the vast majority of cases around the country. *See, e.g., United States ex rel. Calhoun v. Twomey,* 454 F.2d 326, 328 (7th Cir. 1971) (Proceeding for return of extradited prisoner is not a critical stage.); *Dunkin v. Lamb,* 500 F. Supp. 184, 187 (D. Nev. 1980) ("[B]ecause extradition is not a critical stage of the criminal proceedings, there is no constitutional right to an attorney. Instead, such a right is statutory . . . ."); *Sullivan v. State,* 43 Ala. App. 133, 181 So. 2d 518, 520 (1965) (Although statute gives a person under arrest for rendition to another state the right to the assistance of legal counsel in a habeas corpus proceeding, the statute does not expressly require that such person be represented by court-appointed counsel if he is unable to employ counsel. The defendant was denied no constitutional right.); *Powell v. State,* 19 Ariz. App. 377, 507 P.2d 989, 990 (1973) (No right to have appointed counsel at a rendition hearing.); *Rugg v. Burr,* 1 Ariz. App. 280, 402 P.2d 28, 28 (1965) ("We find no law giving the right to counsel at an extradition proceeding before the Governor . . . ."); *State v. Tyler,* 398 So. 2d 1108, 1112 (La. 1981) ("We are unable to agree with relator's contention that these extradition proceedings form a critical stage of a criminal prosecution."); *Rutledge v. Ingham County Sheriff,* 21 Mich. App. 726, 728, 730-31, 176 N.W.2d 417 (1970), *cert. denied,* 401 U.S. 915 (1971) (An indigent person is not entitled to appointed counsel when he is arraigned before the hearing held by the Governor under the Uniform Criminal Extradition Act.); *Wertheimer v. State,* 294 Minn. 293, 297-98, 201 N.W.2d 383 (1972) (The right to counsel in an extradition proceeding is statutory, and is not constitutionally required. Hence, the accused suffered no deprivation of due process or equal protection.); *Roberts v. Hocker,* 85 Nev. 390, 456 P.2d 425, 427-28 (1969) ("If a probation revocation hearing, where a defendant is subject to the loss of his liberty for an extended period of time, is not a critical stage of the criminal proceeding *a*

*fortiori,* an extradition proceeding is certainly not a critical stage of the criminal proceeding."); *Reeves v. Cox,* 118 N.H. 271, 276, 385 A.2d 847 (1978) (A rendition hearing is not a critical stage of a criminal prosecution.); and *Ex parte Medieros,* 552 S.W.2d 156, 158 (Tex. Crim. 1977) (Waiver of right to an extradition proceeding is not vitiated by lack of an attorney's advice.). Utt here relies on *Peo. ex rel. Harris v. Ogilvie,* 35 Ill. 2d 512, 221 N.E.2d 265 (1966). That case is inapposite, however, since it goes no further than to hold that there is a right to counsel at the subsequent habeas corpus proceeding such as the one from which the appeal here was taken.

It is important to bear in mind, as Chief Justice Burger pointed out for the Court in *Doran,* 439 U.S. at 287-88, that interstate extradition is intended to be a summary and mandatory executive proceeding derived from the language of U.S. Const. art. IV, § 2, cl. 2. It was never contemplated that the asylum state was to conduct the kind of preliminary inquiry traditionally intervening between the initial arrest and trial. A Governor's grant of extradition is prima facie evidence that the constitutional and statutory requirements have been met. Thereafter, a court considering release on habeas corpus can do no more than decide whether the extradition documents on their face are in order, whether the petitioner has been charged with a crime in the demanding state, whether the petitioner is the person named in the request for extradition, and whether the petitioner is a fugitive. 439 U.S. at 288-89.

The Governor's rendition hearing fundamentally is a factual proceeding unconnected with guilt or innocence. Defenses need not be raised. Basic rights cannot be said to be irretrievably lost. The absence of counsel will not impair defense on the merits. At the habeas corpus hearing, where he does have counsel, the accused individual may bring forward those contentions properly cognizable in his effort to avoid return to the place from whence he came. The rendition hearing is in sharp contrast to those situations heretofore found to be critical stages of criminal proceedings. Moreover, as we pointed out in *Shields,* 257 Md. at 390-91

(quoting *Biddinger v. Commissioner of Police,* 245 U.S. 128, 133, 38 S. Ct. 41, 62 L. Ed. 193 (1917)), an individual delivered up to the authorities of a sister state is not being sent to an alien jurisdiction for trial, one with laws which our standards might condemn. Rather, the fugitive is simply being returned for trial in the manner specified by the laws of that state where he remains under the protections of the United States Constitution. We find the hearing before the Governor not to be a critical stage of the criminal process that would confer upon the indigent the right to assigned counsel.

### ii The Public Defender statute

Code (1957, 1976 Repl. Vol., 1977 Cum. Supp.) Art. 27A, § 4 (b) requires the Public Defender to provide indigent defendants legal representation in each of four enumerated categories. The parties are in agreement that the only category which could be applicable here is that stated in § 4 (b) (4): "Any other proceeding where possible incarceration pursuant to a judicial commitment of individuals in institutions of a public or private nature may result."

Obviously, this case must be determined upon a construction of the statute. The principles of statutory construction have been stated by the Court many times. We reviewed many of these principles in *Police Comm'r v. Dowling,* 281 Md. 412, 418-20, 379 A.2d 1007 (1977), referring to a number of our prior cases for each statement made. The principles relevant and applicable here are that the cardinal rule of statutory construction is to ascertain and carry out the real legislative intent, that in determining this intent the Court considers the language of an enactment in its natural and ordinary signification, and that there usually is no need to look elsewhere to ascertain the General Assembly's intent if no ambiguity or obscurity exists in the statutory language. *Accord, Vallario v. State Roads Comm'n,* 290 Md. 2, 6, 426 A.2d 1384 (1981), and cases there cited.

The issue here is what is meant by "possible incarceration

pursuant to a judicial commitment . . . ." It is to be noted that the references in subsections 1, 2, and 3 of § 4 (b) are to "any criminal or juvenile proceeding constitutionally requiring the presence of counsel prior to presentment before a commissioner or judge"; to "[c]riminal or juvenile proceedings, where the defendant is charged with a serious crime, before the District Court of Maryland, the Supreme Bench of Baltimore City, the various circuit courts within the State of Maryland, and the Court of Special Appeals"; and to "[p]ostconviction proceedings under Article 27, Annotated Code of Maryland." Each of these is a proceeding within this State which involves an ultimate adjudication before a Maryland tribunal of disputed facts affecting an individual's final status.

In contrast, an extradition hearing does not resolve issues of guilt or innocence, or determine the accused's status pursuant to a final disposition and commitment under the laws of Maryland. As we earlier indicated in our discussion, the extradition hearing serves the limited purpose of determining whether the accused is the individual sought by the demanding state's authorities, in accordance with the requirements of Art. 41, §§ 16-43. We also pointed out that the Govenor's hearing is summary in nature, and is intended to ensure the fugitive's prompt return for trial in the demanding state. Thus, any incarceration or commitment which may result will come only after due trial in a place beyond the borders of this State.

Given these basic distinctions between the extradition hearing and those proceedings explicitly referred to in subsections 1, 2, and 3 of § 4 (b), our determination whether an indigent accused is entitled to appointed counsel should be consistent with the General Assembly's statement of policy and intent regarding the Public Defender statute. Article 27A, § 1, which has remained unchanged since its enactment as Ch. 209 of the Acts of 1971, states in pertinent part:

"It is hereby declared to be the policy of the State of Maryland to provide for the realization of the constitutional guarantees of counsel in the rep-

resentation of indigents, including related necessary services and facilities, in criminal and juvenile proceedings within the State, and to assure effective assistance and continuity of counsel to indigent accused taken into custody and indigent defendants in criminal and juvenile proceedings before the courts of the State of Maryland . . . ."

In language similar to that used in § 1, Art. 27A, § 4 (c) provides, "This article applies only to representation in or with respect to the courts of this State." Section 4 (d) then states:

"Representation by the Office of the Public Defender or by an attorney appointed by the Office of the Public Defender, shall extend to all stages in the proceedings, including custody, interrogation, preliminary hearing, arraignment, trial, and appeal, if any, and shall continue until the final disposition of the cause, or until the assigned attorney is relieved by the Public Defender or by order of the court in which the cause is pending."

The "stages in the proceedings" thus enumerated are incident to a final adjudication and disposition as a result of an allegation that a person has transgressed Maryland's criminal law, whether as an adult where the offender would be tried in the regular manner or as a juvenile where he would be prosecuted in the juvenile system as a delinquent for an act that otherwise would constitute a criminal offense if committed by an adult.

It is "incarceration pursuant to a judicial commitment of individuals in institutions of a public or private nature" that is mentioned in Art. 27A, § 4 (b) (4). "Incarceration" is a term defined by Black's Law Dictionary 685 (5th ed. 1979) as "[i]mprisonment; confinement in a jail or penitentiary." Whatever the other ramifications of § 4 (b) (4) may be when it refers to "commitment of individuals in institutions of a public or private nature," we read it in this case as being applicable to a judicial commitment in the State of Maryland

as a direct outgrowth of a "proceeding" at which there is to be representation. Hence, the Public Defender is not obliged to represent an accused at a rendition hearing before the Governor.[3]

> *Judgment affirmed; appellant to pay the costs.*

*Eldridge, J., dissenting:*

In my view, under the plain language of the Maryland Public Defender Act, Maryland Code (1957, 1976 Repl. Vol. & 1981 Cum. Supp.), Art. 27A, §§ 1-14, the petitioner Utt was entitled to representation by the Office of the Public Defender at the Governor's extradition hearing. Therefore, consistent with this Court's policy against deciding constitutional issues unnecessarily,[1] I would not reach the question of whether Utt had a constitutional right to counsel at the hearing.

The Public Defender Act, Art. 27A, § 4, sets forth the duty of the Public Defender's Office to provide legal representation. The pertinent provisions of § 4 are as follows:

---

**3.** Cognizance is taken of the dissent. To apply its reasoning relative to representation by the Public Defender in "[a]ny other proceeding where possible incarceration pursuant to a judicial commitment of individuals . . . may result" would require representation when a warrant is obtained for a person's arrest. Certainly under that reasoning representation would be required when an accused makes his initial appearance before a judicial officer pursuant to Maryland District Rule 723. There can be no disputing the fact that a person so appearing may be convicted and sent to prison. Thus, that proceeding would appear to meet the dissent's criteria for representation.

Of course, the short answer to these observations is that the General Assembly did not intend to reach that far when it enacted this statute, just as it did not intend that the Public Defender appear at extradition hearings before the Governor.

**1.** *See, e.g.,* Avara v. Baltimore News American, 292 Md. 543, 554, n. 7, 440 A.2d 368, 373, n. 7 (1982); Employ. Sec. v. Balto. Lutheran H. S., 291 Md. 750, 754, n. 2, 436 A.2d 481, 484, n. 2 (1981); Town of Forest Heights v. Frank, 291 Md. 331, 336, 435 A.2d 425, 428 (1981); Simms v. State, 288 Md. 712, 725, 421 A.2d 957 (1980).

"§ 4. Duty to provide legal representation.

(a) It shall be the primary duty of the Public Defender to provide legal representation for any indigent defendant, eligible for services under this article. Legal representation may be provided by the Public Defender, or, subject to the supervision of the Public Defender, by his deputy, by district public defenders, by assistant public defenders, or by panel attorneys as hereinafter provided for.

(b) Legal representation shall be provided indigent defendants in the following proceedings:

(1) In any criminal or juvenile proceeding constitutionally requiring the presence of counsel prior to presentment before a commissioner or judge.

(2) Criminal or juvenile proceedings, where the defendant is charged with a serious crime, before the District Court of Maryland, the Supreme Bench of Baltimore City, the various circuit courts within the State of Maryland, and the Court of Special Appeals.

(3) Postconviction proceedings under Article 27, Annotated Code of Maryland.

(4) *Any other proceeding where possible incarceration pursuant to a judicial commitment of individuals in institutions of a public or private nature may result.*

\* \* \*

(d) *Representation by the Office of the Public Defender or by an attorney appointed by the Office of the Public Defender, shall extend to all stages in the proceedings, including custody, interrogation,* preliminary hearing, arraignment, trial, and appeal, if any, and shall continue until the final disposition of the cause, or until the assigned attor-

ney is relieved by the Public Defender or by order of the court in which the cause is pending." (Emphasis supplied.)

It is obvious that, by this statute, the Legislature intended to provide for legal representation of indigents in a broad range of cases. This statutory right to counsel clearly extends beyond the limits of the constitutional right to counsel. Those cases in which there is a constitutional right to counsel represent only one of the four categories of proceedings in which the Public Defender must furnish legal representation to indigents. Moreover, § 4 (d) underscores the extensive statutory right of representation. Instead of being limited to "critical stages" of "prosecutions," § 4 (d) mandates that the representation by the Public Defender's Office "shall extend to *all stages in the proceedings,* including custody, interrogation," etc. (Emphasis supplied.)

The specific statutory provision involved in this case is § 4 (b) (4), which requires the Public Defender to furnish representation for indigents in "[a]ny other proceeding where possible incarceration pursuant to a judicial commitment . . . may result." The majority correctly states that the meaning of this provision "must be determined by the principles of statutory construction," that in interpreting a statutory provision "the Court considers language of an enactment in its natural and ordinary signification," and that there is no need to look elsewhere to ascertain legislative intent "if no ambiguity or obscurity exists in the statutory language." In other words, as Judge Smith emphasized for the Court in *Vallario v. State Roads Comm'n,* 290 Md. 2, 7-8, 426 A.2d 1384, 1386 (1981), when "[w]e have . . . a clear and unambiguous statute," effect must be given to "the plain meaning of [the] statute" regardless of what the controlling legal principle would otherwise be. In the present case, after initially professing adherence to this principle of statutory construction, the majority proceeds to ignore it.

The majority "read[s]" § 4 (b) (4) "in this case as being applicable to a judicial commitment in the State of Maryland as a direct outgrowth of a proceeding at which there is to be

representation." By this, the majority appears to mean that the "proceeding" under § 4 (b) (4) must itself involve or conclude with a judicial commitment. However, this is not what the statutory language says. Section 4 (b) (4) embraces *any* proceeding which *may result* in possible incarceration pursuant to a judicial commitment. Under the plain meaning of the words in the statute, the "judicial commitment" need not take place in the "proceeding" as long as "incarceration pursuant to a judicial commitment" may be a "result" of the proceeding. Under the Maryland Uniform Criminal Extradition Act, Code (1957, 1978 Repl. Vol.), Art. 41, §§ 22, 23, and 25, if the Governor decides that the demand should be complied with, he is to issue a warrant of arrest and the demanded person is to be arrested under the warrant. However, before the arrested person may be delivered to the demanding state, he must first be taken before a judge of a Maryland court of record. At that judicial proceeding, he is informed of certain matters, including his right to "test the legality of his arrest," and allowed a reasonable time to apply for a writ of habeas corpus.[2]

---

2. Art. 41, §§ 22, 23 and 25, provide:

"§ 22. Issue of Governor's warrant of arrest; its recitals.

If the Governor decides that the demand should be complied with, he shall sign a warrant of arrest, which shall be sealed with the State seal, and be directed to any peace officer or other person whom he may think fit to entrust with the execution thereof. The warrant must substantially recite the facts necessary to the validity of its issuance."

"§ 23. Manner and place of execution.

Such warrant shall authorize the peace officer or other person to whom directed to arrest the accused at any time and any place where he may be found within the State and to command the aid of all peace officers or other persons in the execution of the warrant, and to deliver the accused, subject to the provisions of this subtitle to the duly authorized agent of the demanding state."

"§ 25. Rights of accused person; application for writ of habeas corpus; appeal from denial.

No person arrested upon such warrant shall be delivered over to the agent whom the executive authority demanding him shall have appointed to receive him unless he shall be first taken forthwith before a judge of a court of record in this State, who shall inform him of the demand made for his surrender and of the crime with which he is charged, and that he has the right to demand and procure legal counsel; and if the prisoner or his counsel shall state that he or they desire to test the legality of his arrest, the judge of

Certainly, the required proceeding before the judge, resulting from the Governor's issuance of a warrant, will in the majority of cases conclude in a "judicial commitment." In most instances, the consequence of the court proceeding, which in turn resulted from the Governor's proceeding, will be that the defendant is incarcerated in this state until his arrival in the demanding state. And once he is in the demanding state, there will likely be further judicial proceedings ending with additional incarceration.

Under the scheme of the Criminal Extradition Act, a hearing before the Governor is a "proceeding" which may result in incarceration pursuant to a judicial commitment, and thus it is a "proceeding" encompassed by the plain language of § 4 (b) (4). Furthermore, by referring to *any* proceeding where *possible* incarceration in *public or private* institutions *may* result, the Legislature clearly indicated that § 4 (b) (4) could encompass a broad and diverse group of cases. The majority's very limited view of § 4 (b) (4) ignores this legislative intent.

At oral argument before us, the attorney for the State virtually conceded that the plain language of § 4 (b) (4) is broad enough to cover an extradition hearing before the Governor, pointing out: "We [the State] have a problem with the literal language of the Public Defender Statute." Furthermore, the attorney for the State acknowledged that an attorney can be effective at the Governor's hearing and that "the Governor's decision goes a long way in deciding whether there shall be incarceration." Finally, the State conceded that, as a matter of policy, the demanded person who can afford to retain his own attorney is entitled to be represented by that attorney at the Governor's hearing.

such court of record shall fix a reasonable time to be allowed him within which to apply for a writ of habeas corpus. When such writ is applied for, notice thereof, and of the time and place of hearing thereon, shall be given to the prosecuting officer of the county or the City of Baltimore in which the arrest is made and in which the accused is in custody, and to the said agent of the demanding state. If the application for a writ of habeas corpus after an extradition hearing only, is denied by the trial court, the denial may be appealed to the Court of Special Appeals."

Also during the oral argument before this Court, the assistant public defender now representing the petitioner stated, on behalf of the Office of Public Defender, that the Office is willing and able to represent indigents at the Governor's extradition hearings. Furthermore, it was represented that the Public Defender's Office would not need a new "unit" or any additional attorneys to perform this task.

In light of the policy reflected in the Public Defender Act, the value of counsel's service at an extradition hearing and the conclusive effect of the decision if the Governor can be persuaded to refuse extradition, the policy permitting paid counsel to represent demanded persons, and the position taken in this Court by the Public Defender's Office, it is difficult to understand why the majority strains to circumvent the literal language of the statute and hold that indigents are not entitled to public defender representation at the Governor's extradition hearings.

Judge Davidson has authorized me to state that she concurs with the views expressed herein.