LUXURIOUS SWIMMING POOLS, INC. *v.* ELMER H. TEPE

[No. 3-276A29. Filed August 28, 1978.]

*Joseph V. Simeri, Kramer, Rowe, Sweeney, Butler, Simeri & Laderer,* of South Bend, for appellant.

*Timothy P. McLaughlin, Bodine, McLaughlin & Bodine,* of Mishawaka, for appellee.

STATON, J. — On July 27, 1966, Elmer H. Tepe contracted with Luxurious Swimming Pools, Inc. for the construction of a porcelainized steel wall pool in his backyard. The actual installation of the pool was begun on April 10, 1967. Within one or two days after the finished pool was filled with water, an eight foot crack was noticed in its concrete bottom. Tepe's testimony indicates that two additional cracks, of nine and twenty-three feet in length, developed between May and July of 1967. In 1967 and 1968, the pool also sank two and one-half inches in its southeast corner. The pool developed additional water leaks and cracks during 1969, 1970, and 1971. It again began to leak in the winter of 1972. In 1973, two new cracks of twenty-one and six feet in length occurred, followed by the ensuance of more leaking and an additional crack in 1974.

Tepe filed his Complaint for Breach of Contract against Luxurious Pools in the St. Joseph Superior Court on April 23, 1973. His Amended Complaint for Damages, filed on June 6, 1973, charged Luxurious Pools with breach of express warranty, breach of implied warranty of fitness, breach of implied warranty of merchantability, and negligence in its construction of his pool.

On September 24, 1975, the trial court entered its Findings of Fact and Conclusions of Law. It, in effect, found Luxurious Pools to have been

negligent in its construction of Tepe's pool and ordered Luxurious Pools to pay Tepe damages in the amount of $5,189.00, plus the costs of the action. Luxurious Pools presents the following questions for review:

(1) Did the trial court erroneously apply the ten year statute of limitations of IC 1971, 34-4-20-2 (Burns Code Ed.) to Tepe's complaint?

(2) Did the trial court err by concluding, as a matter of law, that Luxurious Pools was under a duty to inform Tepe of the unusual ground conditions at the pool site?

(3) Did the trial court err by awarding Tepe damages for the diminution in value to his pool in addition to the costs of its repair?

We conclude that the trial court erred in its award to Tepe of damages for the diminution in value to his pool. This case is remanded to the St. Joseph Superior Court for a remittitur of the $1,500.00 awarded to Tepe for loss in value. The judgment of the trial court is affirmed in all other respects.

## I.

### Statutory Construction

Tepe's amended complaint is presented in four counts. The last of these alleges that Luxurious Pools negligently constructed his swimming pool. The trial court imposed liability against Luxurious Pools on the basis of this allegation. It also found Tepe's complaint to have been timely filed within the ten (10) year statute of limitations established by IC 1971, 34-4-20-2 (Burns Code Ed.), which governs actions for the recovery of damages to real property.

Luxurious Pools claims that the above statute is inapplicable to its activities and that the trial court erred by not utilizing the statute of limitations found in IC 1971, 34-1-2-1 (Burns Code Ed.). This statute provides, in part, that no action for injury to property other than personal property shall be commenced later than six years after the accrual of the cause of action.

Luxurious Pools specifically argues that its installation of Tepe's swimming pool did not involve it in the design, planning, or supervision of an

improvement to real estate, or in the observation of the construction of such an improvement, as would place it within the purview of IC 1971, 34-4-20-2.[1] It further contends that this statute is intended to regulate the liability of supervisory personnel, principally architects and engineers, rather than of contractors. This reasoning is untenable to the extent that it suggests that one or more of the above regulated functions were not also exercised in the construction of Tepe's pool. IC 1971, 34-4-20-2 describes functions which are physically segregated from the construction of an improvement to real estate. Nothing in this statute, however, implies that the exercise of these functions must be solely restricted to licensed professionals.

Richard W. McDaniel, president of Luxurious Pools, testified that he followed a manufacturer's plans and specifications in the construction of Tepe's pool. Prior to the beginning, he unsuccessfully attempted to persuade Tepe to move the pool site closer to his home in order to facilitate the ease of its installation. He subsequently found vegetation in the fill dirt excavated from the pool site. Although this discovery was known by him to be indicative of potential instability in the ground surrounding the pool, he dismissed it because of the sparsity of vegetation actually unearthed. McDaniel also felt that the ground was sufficiently compacted, after settling one winter and by the passage over it of a bulldozer, to eliminate the necessity for additional reinforcement of the pool.

McDaniel's attempt to move the site of the pool and his later decision to dispense with its reinforcement represents the formulation of a strategy for construction which is synonymous with the concept of planning. His testimony indicates that he sustained the ultimate responsibility for the execution of the manufacturer's pool design. This role may clearly be denominated as being supervisory.

McDaniel's work represents an integration of planning, supervisory, and construction skills. He was also the sole supervisory authority on

---

1. As amended in 1977, 34-4-20-2 now encompasses actions to recover damages for "any deficiency, or alleged deficiency, in the design, planning, supervision, construction, or observation of construction, of an improvement to real property, . . ." IC 1971, 34-4-20-2 (Burns Code Ed., Supp. 1977).

this project. The effect of any miscalculation made by him would not have been materially different had he restricted his activities solely to supervision. It is unrealistic to exempt Luxurious Pools from regulation under IC 1971, 34-4-20-2 merely because its chief executive did not exclusively restrict his efforts to those passive functions enumerated in this statute.

The trial court correctly applied the ten (10) year statute of limitations of IC 1971, 34-4-20-2 to the facts of Tepe's amended Complaint.[2]

## II.

### Disclosure

Luxurious Pools also alleges that the trial court erred, as a matter of law, in concluding that it was under a duty to inform Tepe of the unusual ground conditions on the construction site. This issue has not been previously considered in Indiana.

Luxurious Pools relies partly on the following statement from *Russ v. Lakeview Development* (City Ct. N.Y. 1954), 133 N.Y.S.2d 641, 646, to support its position:

> "In any event, the contractor's or builder's duty may not be so enlarged as to require him to make an examination of the condition of the soil in order to determine whether all parts of the structure to be erected will be watertight if the agreed plans and specifications are followed. . . ."

However, this statement is qualified by a reference in *Russ* to the holding

---

2. Tepe's amended complaint also presented three additional counts which alleged that Luxurious Pools had committed breaches of express warranty, IC 1971, 26-1-2-313 (Burns Code Ed.), implied warranty of merchantability, IC 1971, 26-1-2-314 (Burns Code Ed.), and implied warranty of fitness for a particular purpose, IC 1971, 26-1-2-315 (Burns Code Ed.), in its construction of his pool. Luxurious Pools claims that only the four-year statute of limitations set forth in IC 1971, 26-1-2-725 (Burns Code Ed.) would have been properly applicable to Tepe's action had the court found a breach of any of these warranties. This assumption is erroneous since 34-4-20-2 expressly applies to an:

> "action to recover damages [to real property] whether based upon contract, tort, nuisance *or otherwise* . . . (our emphasis).

Therefore, it is the existence of an injury to real property brought about by specified deficiencies, rather than the cause of action under which a recovery for such injury is sought, which governs the applicability of the latter statute.

of *Rubin v. Coles* (City Ct. N.Y. 1931), 142 Misc. 139, 253 N.Y.S. 808. *Russ, supra*, 133 N.Y.S.2d at 646.

*Rubin* involved a contract to construct a building extension. Although the contractor followed an architect's specifications, the extended foundation began to buckle within two months of completion because it was built on loose, filled soil. The structure was subsequently condemned. The court held:

> "It has been repeatedly held that, even though he be bound to follow fixed plans and specifications, the contractor owes the duty to examine such plans and judge of their sufficiency; that he is bound to discover defects that are reasonably discoverable or patent; and, where he knows or had reason to believe that the plans are defective, and follows them without pointing out such defects to the owner or architect, he is not entitled to recover if the building proves insufficient because of such defects. . . ." (Citations omitted). 253 N.Y.S. at 811.

The effect of this statement is to require a contractor to utilize his expertise and to notify even an architect of reasonably discoverable defects. Therefore, the fact that Tepe selected the pool site and, subsequently, had fill dirt dispersed in that area, will not, by itself, absolve Luxurious Pools of its liability for non-disclosure of a patently evident soil defect.

Luxurious Pools also claims that Tepe ignored advice from McDaniel and another expert to change the pool's proposed location. However, the character of these requests does not indicate that Tepe understood them to be related to problems with soil instability.

Richard McDaniel gave the following testimony pertaining to his effort to have the pool site changed:

"Q. You're telling the Court now that you did say something to Mr. Tepe about moving it closer to the house?

"A. Yes.

"Q. Did you tell him why?

"A. Sure, there was a bank there.

"Q. What would you say that you told him?

"A. That we wanted to move it closer to the house because of

the bank there from where we earlier said that we would construct it.

"Q. That is all that you said, didn't you?

\* \* \*

"A. That it would be easier to construct because the closer that we got to the house the least involved we would be with the bank.

"Q. But you never discussed the problem about the bank, did you?

"A. At that time I had no problem with the bank.

"Q. But you anticipated problems with the bank?

"A. It is much easier to construct something.

"Q. You anticipated a problem with the bank, didn't you?

"A. I—the only problem that I had anticipated with the bank was not one that would cause cracks to the pool but a problem of accessibility and it is easier to construct.

"Q. That is the only suggestion that you made to Mr. Tepe that it was easier to construct?

"A. That's right."

It is evident from McDaniel's testimony that the sole motivation behind his desire to have the pool site changed was to facilitate the ease of its construction.

Leon J. Yoder, a pool construction expert testifying on behalf of Tepe, gave the following testimony:

"Q. When you and Mr. Tepe were talking about where he was to place this pool you did not, you didn't tell him, Elmer, don't put it out there on the fill dirt it was or it is going to crack?

"A. No. sir.

"Q. But you suggested that he move it closer to the home?

"A. Yes, as I say if he understood that is something else."

Yoder's replies indicate only that he advised Tepe as to a suitable pool site. His testimony does not suggest, however, that he informed Tepe of any particular rationale for this recommendation. Therefore, in the absence of reliable evidence showing Tepe's awareness of the hazard-

ous soil conditions present at the pool site, the responsibility devolved upon Luxurious Pools to apprise him of the actual situation.

### III.

### Damages

The trial court entered the following judgment in favor of Tepe:

"4. That the measure of damages is the cost of two vinyl liners at $1,500.00 each, plus the difference in value of a vinyl lined pool and a porcelainized steel wall pool which is $1,500.00, plus the cost of repairs made which were not maintenance of the pool which were $689.00. Total damages of $5,189.00."

Luxurious Pools correctly contends that the trial court erred by including the difference in value between the vinyl lined and porcelainized steel wall pools in its consideration of damages.

The following testimony given by Leon Yoder indicates that the damage to Tepe's pool was not permanent:

"Q.   Now, do you have an opinion as to whether this pool in its present condition and the history it had of cracking and patching, do you think that it can be repaired?

"A.   Yes, the settling could be repaired.

"Q.   Do you have an opinion as to the best way in fact that it can be repaired?

"A.   The way I would suggest if this were my own pool, the way that I would do it is to put a vinyl liner in it and I would lay heavy felt or layers of vinyl over the cracking area and I would put a vinyl backing on the vinyl liner.

"Q.   Now, what would be the cost of materials and labor for someone in your position to go in the present pool and as you said for the installation of the liner, what would be the cost?

"A.   Well, today I would say that it would run approximately between $1500 and $2000."

The measure of damages for a non-permanent injury to property having a separate value from the real estate to which it is attached is the cost of its restoration. *General Outdoor Advertising Co. v. LaSalle Realty Corp.* (1966), 141 Ind.App. 247, 267, 218 N.E.2d 141, 151. The trial court's award of the two vinyl liners, valued

at a total of $3,000.00, adequately compensated Tepe for the costs involved in the restoration and future repair of his pool.[3] The "before-after" measure of damages included by the trial court in its judgment is appropriate only as a measure of damages for *permanent* injury to real property. *General Outdoor Advertising, supra,* 141 Ind.App. at 264, 218 N.E.2d at 150. *See also Gene B. Glick Co., Inc. v. Marion Construction Corp.* (1975), 165 Ind.App. 72, 331 N.E.2d 26, 37; *Smith v. Glesing* (1969), 145 Ind.App. 11, 248 N.E.2d 366. The "before-after" measurement as a part of Tepe's recovery amounts to an excessive recovery[4] in light of the evidence and must be disallowed.

This case is remanded to the St. Joseph Superior Court with instructions to remit the amount of its damage judgment in conformance with this opinion. We affirm its judgment in all other respects.

Garrard, P.J., Concurs;

Robertson, J. (by designation), concurs.

NOTE — Reported at 379 N.E.2d 992.

---

3. Richard McDaniel testified that a vinyl-lined pool will last approximately eight years, while a porcelainized steel wall pool will last from fifteen to as many as twenty-five years. An award to two vinyl liners was necessitated because that number would have to be installed in order to achieve the lifespan originally expected of the porcelainized steel wall pool.

4. The recovery is double in that a vinyl liner was valued at $1500.00 and could be expected to last for eight years. There was expert testimony that a newly constructed vinyl-lined pool would cost $1500.00 less than the porcelainized steel wall pool. Tepe had already used the pool eight years. Taking the *maximum* life of a porcelainized steel wall pool (25 years), three liners at most would have been necessary. One liner would have been included in the original installation. Therefore, the court's award of the value of two liners ($1500.00 + $1500.00 = $3000.00) placed Tepe in as good a position as he would have been in had the porcelainized steel wall pool lasted 24 years. Testimony was not explicit, but it may reasonably be inferred that the reason a vinyl-lined pool is considered to be worth $1500.00 less than the porcelainized steel wall pool is that at least one $1500.00 vinyl liner will be required during the life of the pool.