Daniel R. COFFMAN, b/n/f Richard Coffman, Appellants (Plaintiffs Below),

v.

AUSTGEN'S ELECTRIC, INC., an Indiana Corporation; Behlen Manufacturing Company, Division of the Wickes Corporation; and Hutchinson Manufacturing Company, Division of Royal Industries, Appellees (Defendants Below).

No. 3–681A156.

Court of Appeals of Indiana, Third District.

June 29, 1982.

George Vann, John W. Barce, Barce, Vann & Ryan, Kentland, for appellants.

Richard A. Mayer, Robin D. Pierce, Spangler, Jennings, Spangler & Daugherty, P. C., Merrillville, for appellee Behlen Mfg. Co.

Larry G. Evans, F. Joseph Jaskowiak, Hoeppner, Wagner & Evans, Valparaiso, for appellee Hutchinson Mfg. Co.

HOFFMAN, Presiding Judge.

Richard Coffman owns and operates a farm near Hebron, Indiana. In 1968 he purchased a grain dryer made by Behlen Manufacturing Company (Behlen) for use on the farm. In order to transfer grain from this dryer to a storage bin, Coffman also installed a portable auger. Two additional storage bins were later added to meet the needs of the farm's expanding grain production. The portable auger, however, could not reach the most distant bin to fill it. In the fall of 1974 Coffman therefore found it necessary to install a cross-auger between the top of the two most distant bins. This cross-auger was manufactured by Hutchinson Manufacturing Company (Hutchinson).

A hopper box was attached to the end of the cross-auger into which grain could be received from the portable auger. The actual cross-auger shaft ran fully exposed through the bottom of this hopper box.

After purchasing these additional components, Coffman hired Austgen's Electric, Inc. (Austgen), to perform the electrical installation necessary for their incorporation into the grain drying system. On October 24, 1974, an Austgen employee, Steve Harder, was at work wiring the cross-auger to the system's control panel when Coffman and his twelve-year-old son, Daniel, re-

turned from the fields. Coffman then informed Harder that he had also been having trouble getting the auger intended to fill the dryer to operate. During testing of the system, a bird's nest was observed falling into the hopper box on the cross-auger from an auger feeding into it. Coffman then allowed Daniel to climb up to the hopper box in order to remove the nest. Daniel had his hand badly mangled, however, when the power suddenly went on while he was reaching into the hopper box. The resultant injury required that Daniel's arm be amputated above the wrist.

Richard and Daniel Coffman subsequently brought suit alleging that defendant Hutchinson was negligent in its failure to place any guards over the auger shaft, and that defendant Behlen was negligent in the improper design of the control panel which allowed the inadvertant operation of the auger. Plaintiffs also asserted products liability claims against Hutchinson and Behlen. Defendant Austgen's Electric, Inc., was dismissed from the suit pursuant to a loan agreement with plaintiffs prior to a jury's finding for the other defendants. Plaintiffs now appeal.

Appellants initially contend that the trial court erred in excluding certain evidence offered in rebuttal of the assertions of defendant Hutchinson.

Plaintiffs' expert witness, Professor Liljedahl, testified that in his opinion the cross-auger was unreasonably dangerous in that the inlet box lacked a protective shield to prevent contact with the moving auger shaft. Liljedahl stated that a grill-like device with two-inch openings would serve this purpose well.

During presentation of their case, defendants then called Dwight Benninga, the Hutchinson director of engineering, as a witness. Benninga testified that such a guard was impracticable as clogging of the inlet box would rapidly occur. He further stated that he was unaware of any auger manufacturer that installed grill-type guards on inlet boxes such as those advocated by plaintiffs' expert.

During cross-examination of Benninga, plaintiffs attempted to rebut the above testimony by introducing an exhibit which depicted an intake safety guard on a roof auger manufactured by a Hutchinson competitor. Plaintiffs also attempted to introduce this exhibit during the testimony of their rebuttal witness, Jeffrey Wilson, who was a distributor of farm augers for a Hutchinson competitor. The trial court, however, refused to admit this exhibit as improper rebuttal evidence. Plaintiffs then inquired of witness Wilson whether he had ever sold an inlet box without a shield on it. The trial court also sustained defendants' objection to this testimony.

■ Rebuttal evidence is that which tends to explain, contradict, or disprove evidence offered by the adverse party. *Layton v. State* (1973), 261 Ind. 251, 301 N.E.2d 633.

"As a rule, a party cannot divide his evidence and give part in chief and part in rebuttal; if he goes into a subject originally, he must then present all his evidence on that point. However, it is within the discretion of the trial court to admit or exclude rebuttal evidence which should or could have been given in chief." 28 I.L.E. *Trial* § 53, at p. 55.

A trial court need not be reversed for its failure to allow a party to introduce part of its evidence on rebuttal which properly should have been made during its case-in-chief. *Waugaman, Admx. v. Gary Methodist Hosp.* (1972), 151 Ind.App. 279, 279 N.E.2d 240.

■ In the instant cause any testimony of exhibits concerning safety guards used by competitors could have been introduced during the plaintiffs' case-in-chief. Defense witness Benninga testified only that he knew of no competitor that placed guards on its augers, not that there were none. Thus, in actuality the tendered rebuttal evidence neither disproves nor contradicts the prior testimony. By excluding this evidence the trial court additionally avoided unfair surprise to defendants since neither the name of witness Jeffrey Wilson nor the tendered exhibit was listed by plain-

tiffs in the pretrial order. Plaintiffs have demonstrated no abuse of discretion by the trial court, and the proffered evidence was therefore properly refused.

At trial plaintiffs also placed in issue whether Behlen's use of an off-delay timer in the control panel was unreasonably dangerous.[1] On cross-examination plaintiffs' expert witness, Professor Hinkle, admitted that he had been a consultant for Beard Industries in the design of a dryer similar to that made by Behlen. Hinkle made no comparison of the two units, however.

Defendant Behlen subsequently called Ron Pollak, a Behlen electrical engineer, to testify. Pollak testified that he was also familiar with the Beard Industries dryer and that its electrical circuit was the same as the Behlen dryer when operated in the manual mode. Plaintiffs then called Ron Noyes, chief engineer for Beard Industries, in rebuttal. Appellants again claim error in the trial court's exclusion of this testimony.

As noted by the court in its ruling, plaintiffs had raised the issue of Behlen's reasonableness in using an off-delay timer during their case-in-chief. Plaintiffs' expert witness, Professor Hinkle, had testified at length on this subject. Though the testimony of Noyes' may have impeached that of Pollak, its ultimate purpose was to embellish the evidence previously presented. It was therefore within the discretion of the trial court to refuse to admit this testimony as it properly should have been offered during the case-in-chief. *Waugaman, supra.*

Appellants next contend that the trial court erred in admitting evidence which is allegedly hearsay. A Behlen mechanical engineer, Joseph Kratke, testified that he had examined the company's records and had determined that over 2,700 Behlen grain dryers had been sold in the United

States between 1967 and 1974. Kratke further stated that a study by Behlen's service department had revealed no claims that these dryers had caused any injury as the result of any alleged defects in the control panel. Appellants entered a timely objection on the grounds that such testimony would not be subject to cross-examination since Kratke himself had not done the claims study.

Regardless of whether such testimony constitutes hearsay appellants waived any error on this issue at trial. Witness Ron Pollak had previously given virtually the same testimony without timely objection. In *Ashley v. City of Bedford* (1974) 160 Ind.App. 634, at 640, 312 N.E.2d 863, at 867, it was held that "[a]ny error in the admission of evidence is harmless if the same or similar evidence has previously been admitted without objection." (Citation omitted.)

Appellants did move to have Pollak's testimony stricken from the record during their cross-examination. To preserve any error, however, an objection should have been entered or a voir dire conducted prior to allowing Pollak to answer. Appellants did neither. In *Dayton Walther Corp. v. Caldwell* (1980), Ind. 402 N.E.2d 1252, at 1257, it was noted that:

"In *Kern v. State of Indiana,* (1957) 237 Ind. 144, 144 N.E.2d 705, this Court held that where statements admitted into evidence without objection were hearsay but were relevant, the probative value of such statements was for the court or jury, notwithstanding the fact that said evidence could have been excluded if proper and timely objection had been made. The First District Court of Appeals, in *Norrington v. Smith,* (1973) 154 Ind.App. 413, 290 N.E.2d 60, 63, held that: 'At the close of both plaintiff's and defendant's evidence, the defendant-appel-

---

1. The Behlen dryer could be operated in either a manual or automatic mode. Plaintiffs' expert witness, Professor Hinkle, testified that when operated on the automatic mode, the augers designed to unload the dryer were controlled by an off-delay timer which would automatically regulate the unload intervals these augers ran. The significance of using an off-delay timer in

this case is that if power was interrupted while the auger was running, that auger would begin to run immediately and complete its timed cycle once power was restored. Had an on-delay timer been used, the timer would have reset automatically when the power was interrupted. It would then want to start an entire new cycle according to the timer logic of the system.

lants moved to strike the evidence tending to show that the occurrence was other than a collision. However, defendants never objected to the introduction of such evidence during the trial and the court properly overruled appellant's motion to strike the evidence.' Thus, the Court of Appeals found, in that case, that even where the motion to strike was made after the close of all the evidence, the court was not required to grant the motion since no objection was made at the time of its presentation. It is a well-settled rule of law in Indiana that where incompetent evidence, hearsay or otherwise, is admitted without objection, its probative value is for the trier of fact to determine, notwithstanding the fact that such evidence might have been excluded if proper and timely objection had been made." (Citations omitted.)

■ Appellants finally contend that the trial court erred in giving Behlen's tendered Instruction No. 5 and in refusing to give their own tendered Instructions Nos. 8 and 9.

Behlen's modified tendered Instruction No. 5 reads:

"In determining reasonableness of design and manufacture of a product, you may consider:

(1) conformity of defendant's product to the standards of the industry;

(2) conformity of defendant's product to the product of other manufacturers in its industry;

(3) and the extent the product was used by others without harmful incidents." *Record* at 254.

Appellants contend that this instruction misstates the proper standard in strict liability cases.[2] The given instructions must be considered as a whole in determining whether the jury was fairly and properly instructed, and all applicable law need not be incorporated in a single instruction. *School City of Gary v. Claudio* (1980), Ind. App., 413 N.E.2d 628. The record reflects that plaintiffs' given Instruction No. 3 fully and fairly instructed the jury on the actual standard to be applied. Behlen's given Instruction No. 5 did little more than inform the jury that it could consider evidence which was properly admitted at trial in adjudging Behlen's compliance with that standard. *See Price v. Buckingham Manufacturing Company* (1970) 110 N.J.Super. 462, 266 A.2d 140; 2 Frumer, *Products Liability*, § 16A(4)(i), pp. 2B–174, 175. Therefore, the trial court committed no error in giving this instruction to the jury.

■ Plaintiffs' tendered Instruction No. 8 reads as follows:

"In determining whether a machine is defective in design, the jury is entitled to weigh the ease of construction of a safety device against the magnitude of threatened harm in not constructing it. If the latter is of great magnitude and the former is relatively inconsequential you may determine that the machine was defectively designed." *Record* at 273.

In *School City of Gary v. Claudio, supra,* 413 N.E.2d at 636, it was noted that:

"In reviewing a trial court's refusal of tendered instructions an appellate court must determine: 1) whether the tendered instruction correctly states the law; 2) whether there is evidence in the record to support the giving of the instruction; and 3) whether the substance of the tendered instruction is covered by other instructions which are given." (Citation omitted.)

The record discloses that the substance of this instruction was adequately covered by plaintiffs' Instructions Nos. 4 and 10 which were given by the court. No error was committed in refusing a repetitive instruction.

■ Plaintiffs' tendered Instruction No. 9 reads:

"A manufacturer or seller of goods has a duty to give reasonable warning as to dangers inherent or reasonably foreseeable in using the goods. This duty applies even though the goods are not being used

2. It should be noted that IC 1971, 34–4–20A–4 (1981 Burns Supp.) is now dispositive of this issue. However, this statute had not been adopted at the time of Daniel's injury.

in a specified manner so long as such use is one that the manufacturer could reasonably foresee.

"Thus, the defendant [sic] under an obligation and duty to give reasonable warning as to the dangers of said farm equipment even if it is not being used in a specified manner, so long as the use to which the farm equipment was put was a use that the manufacturer could reasonably foresee." *Record* at 272.

Appellants admit in their reply brief that this instruction is directed to both defendants. As such, the instruction is an incomplete statement of the law which would be misleading to the jury.

Plaintiffs' tendered Instruction No. 9 was patterned after an instruction deemed proper by this Court in *American Optical Co. v. Weidenhamer* (1980), Ind.App., 404 N.E.2d 606. This tendered instruction, however, conspicuously omits the concluding sentence of the *Weidenhamer* instruction. That sentence states that where the danger or potentiality of danger is known or should be known to the user the duty to reasonably warn of inherent dangers does not attach. This open and obvious danger rule was also recognized in *Bemis Co., Inc. v. Rubush* (1982), Ind., 427 N.E.2d 1058, at 1061, in which it was stated that:

"In the area of products liability, based upon negligence or based upon strict liability under § 402A of the Restatement (Second) of Torts, to impress liability upon manufacturers, the defect must be hidden and not normally observable, constituting a latent danger in the use of the product. Although the manufacturer who has actual or constructive knowledge of an unobservable defect or danger is subject to liability for failure to warn of the danger, he has no duty to warn if the danger is open and obvious to all."

Clearly, the potentiality of danger inherent in sticking one's hand in an auger which has the propensity to move is open and obvious. The instruction was therefore misleading and incomplete as to defendant Hutchinson, the auger manufacturer. Refusal to give such defective instruction was proper.

The judgment of the trial court is accordingly affirmed.

Affirmed.

GARRARD and STATON, JJ., concur.