GRAIN DEALERS MUTUAL INSUR-
ANCE COMPANY, INC., an Indiana
corporation, as subrogee of Jasper
County Farm Bureau Co-Operative As-
sociation, Inc., an Indiana corporation,
Plaintiffs,

v.

CHIEF INDUSTRIES, INC., a Nebraska
corporation, and Riggs Drying and
Storage Equipment Company, a sole
proprietorship (upon information and
belief), located in Ohio, Defendants.

No. L 84–123.

United States District Court,
N.D. Indiana,
Hammond Division.

July 13, 1985.

David B. McAfee, Michael W. Duffy, Chi-
cago, Ill., William M. Bache, Lafayette,
Ind., for plaintiffs.

Larry R. Fisher, Lafayette, Ind., Charles
W. Ewing, Columbus, Ohio, for defendants.

MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

I.

This cause is before the court on the
motion for summary judgment of defend-
ant, Chief Industries, Inc. (Chief Indus-
tries). Plaintiff, Grain Dealers Mutual In-
surance Company, Inc., commenced this ac-
tion by filing a complaint in the Lafayette
Division of this court on August 31, 1984.
The complaint alleges that on April 6, 1979,
Chief Industries designed, manufactured,
distributed and assembled large capacity,
all-steel grain storage bins and tanks. De-
fendant, Riggs Drying and Storage Equip-
ment Company (Riggs), was in the business
of installation, construction, assembly and
erection of such grain storage bins and
tanks. In this case, Chief Industries manu-
factured, fabricated and assembled an all
steel storage bin, designated as Model 18–
20, on the premises of Jasper County Farm
Bureau Co-Operative Association, Inc. in
Fowler, Indiana. Riggs allegedly estab-
lished, assembled, and/or erected the mod-
el 18–20 grain bin.

In this complaint, Chief Industries, is
charged with the following negligent acts
and omissions: (1) negligent design, fabri-
cation, manufacture and/or assembly of
the model 18–20 grain bin so that it was
incapable of withstanding lateral wind load-
ing under normal conditions to this area;
(2) negligent design, fabrication manufac-
ture and/or assembly of the anchoring sys-
tem in the model 18–20 grain bin; (3) negli-
gent preparation of the instructions for the
erection, installation, and/or assembly of
the model 18–20 grain bin; (4) negligent
design, fabrication, manufacture and/or as-
sembly of the model 18–20 grain bin roof to
sidewall corrections; (5) negligent design,
fabrication, manufacture and/or assembly

of the model 18–20 grain bin in whole as well as component parts in that it failed as a whole after erection and installation to comply with recommended and accepted engineering codes as well as accepted engineering principles as to lateral wind loadings; (6) negligent selection of materials of adequate strength for the model 18–20 grain bin; (7) negligent design, fabrication, manufacture and assembly of the roof to sidewall stiffners; (8) negligent selection of materials of adequate strength for the roof to sidewall connection bolts, nuts and washers, anchor bolts, nuts and washers and anchor angles and sidewall stiffness.

It is further alleged that as a result of such negligence, the roof to sidewall connections and anchor system became detached causing the grain bin to become dislodged and deformed. This, in turn, caused damage to the connected loading and unloading augers and drying fans.

Chief Industries filed a motion for summary judgment on April 1, 1985. This court heard oral argument on the motion June 14, 1985, in Lafayette, Indiana. At that time a schedule for supplemental briefing was set. Such schedule has been met and this motion is now ripe for ruling. Jurisdiction of this court is predicated upon 28 U.S.C. § 1332. The substantive law of Indiana applies.

## II.

### A.

Chief Industries argues that this complaint is time barred by Ind.Code § 33–1–1.-5–5 which provides that "any product liability action in which the theory of liability is negligence or strict liability in tort must be commenced within two [2] years after the cause of action accrues or within ten [10] years after the delivery of the product to the initial user or consumer." Chief Industries contends that since plaintiff's action against it is a "product liability action" based on a negligence theory, plaintiff's claim is barred by the above statute's provision that such actions must be brought within two (2) years after the cause of

action accrues. In support of its argument, Chief Industries relies upon *Monsanto Company v. Miller*, Ind.App., 455 N.E.2d 392, 394 (1983), and *Dague v. Piper Aircraft Corp.*, 275 Ind. 520, 418 N.E.2d 207 (1981), a case emanating from this court. *See Dague v. Piper Aircraft Corp.*, 513 F.Supp. 19 (N.D.Ind.1980).

Plaintiff contends that the applicable statute of limitations is Ind.Code § 34–4–20–1, the Indiana improvement to realty statute. The statute provides that an action can be brought for damages to real and personal property arising out of the design, planning, supervision or construction of an improvement to real property within ten (10) years of the date of substantial completion. Plaintiff argues that this case was filed well within the parameters of this statute. It is beyond dispute that these issues can be properly raised by a motion for summary judgment under Fed. R.Civ.P. 56.

The key case on the issue of whether the Indiana improvement to realty statute or the Indiana products liability statute applies in a factual context as is here presented is *Dodd v. Kiefer*, Ind.App., 416 N.E.2d 463 (1981). In *Dodd*, an electrician installed a certain electrical system in a residential home. After the installation, a fire occurred causing damage to the home. The electrical contractor moved for summary judgment on the basis of Ind.Code § 34–4–20–2 which bars recovery for deficiencies to improvements to real property brought more than ten years after date of substantial completion of the improvement. The trial court denied the motion and Dodd, the electrical contractor, appealed. The Court of Appeals affirmed the trial court's ruling.

The plaintiff homeowner raised a cross-error on appeal regarding the trial court's ruling that the ten year statute of limitations for real estate improvements applied to the product liability count of the complaint. The plaintiff argued that the six and two year accrual statutes for injuries to real (Ind.Code § 34–1–2–1) and personal (I.C. § 34–1–2–2) property should apply.

Immediately after restating the plaintiff's argument, the Court of Appeals noted: "This particular problem has been subsequently resolved with the passage of the Indiana Product Liability Act, IC § 33–1–1.- 5–1 et seq." *Id.* at 465 n. 1.

The Court of Appeals then ruled that the real estate improvement statute applied to the product liability count for two reasons. First, the court noted that the coverage of the real estate improvement statute is very broad since it applies to actions based "upon contract, tort, nuisance or otherwise." It then pointed out that product liability is a form of tort and that there was no statutory intent to exclude products liability from the coverage of the statute of limitations. The court also noted that *Luxurious Swimming Pools v. Tepe*, 177 Ind. App. 384, 379 N.E.2d 992 (1978), indicated that the real estate improvement statute applied to allegations of express and implied warranties because the basis for the cause of action is founded upon an injury to real property. Based on *Luxurious Swimming Pools*, the court apparently concluded that the real estate improvement statute could apply to product liability claims as well as warranty claims.

*Dodd* involved a lawsuit against an electrical contractor who was intimately involved in the construction of an improvement to a particular piece of real estate. Other Indiana cases in which the real estate improvement statute has been applied to an action against an entity which was intimately involved in the improvement of a particular parcel of real estate include *Monsanto Co. v. Miller, supra,* (builder of concrete silo); *Beecher v. White*, Ind.App., 447 N.E.2d 622 (1983) (architect of school); *Beta Alpha Shelter of Delta Tau Delta Fraternity, Inc. v. Strain*, Ind.App., 446 N.E.2d 626 (1983) (designer and builder of heating/cooling system for fraternity house); *Capitol Builders, Inc. v. Shipley*, Ind.App., 439 N.E.2d 217 (1982) (builder of house); *Great Lakes Co. v. Merrill A. Jones & Associates, Inc.*, Ind.App., 412 N.E.2d 257 (1980) (general contractor for new building); *Walsh v. Haltman*, Ind. App., 403 N.E.2d 894 (1980) (builder of new

house); and *Luxurious Swimming Pools, Inc. v. Tepe, supra* (installer and planner of in-ground swimming pool manufactured by another).

The Indiana real estate improvement statute has never been applied to actions against entities like Chief Industries who design fungible products without any particular parcel of real estate in mind and do not participate in the on-site construction of an improvement to real estate. The courts in other jurisdictions which have addressed the issue appear to be unanimous that it is inappropriate to apply real estate improvement statutes similar to Ind.Code § 34–4– 20–2 to entities which mass produce items not intended for particular parcels of real estate. *See, e.g., Montaup Electric Co. v. Ohio Brass Corp.*, 561 F.Supp. 740 (D.R.I. 1983); *Cinnaminson Township Board of Education v. U.S. Gypsum Co.*, 552 F.Supp. 855 (D.N.J.1982).

The Indiana cases in which the real estate improvement statute has been applied have all involved actions against an entity which was intimately involved in designing, planning, constructing, or supervising the construction of an improvement to a particular piece of real estate. Nothing in *Dodd* compels the conclusion that the real estate improvement statute governs this plaintiff's product liability action as against Chief Industries.

Moreover, footnote one to the opinion of the court in *Dodd* indicates that the product liability statute of limitations, not the real estate improvement statute, should be applicable to the plaintiff's action against the defendant. Footnote one states: "This particular problem has been subsequently resolved with the passage of the Indiana Product Liability Act, IC 33–1–1.5–1 *et seq. "* 416 N.E.2d at 465 n. 1. The "particular problem" with which the Court of Appeals dealt in *Dodd* was the determination of the statute of limitations applicable to the product liability count of the plaintiff's complaint. The court stated that the problem was resolved by the passage of the Indiana Product Liability Act. This state-

ment by the court, while rather cryptic, leads to the conclusion that the Product Liability Act's statute of limitations applies to a product liability claim, even when the product is incorporated into real estate.

The conclusion of the Court of Appeals in *Dodd v. Kiefer* that, after the effective date of the product liability statute, the Product Liability Act's statute of limitations governs products liability actions, even when the product has become part of an improvement to real estate at the time it causes damage, is supported by one of the basic rules of statutory interpretation. In a case where two or more statutes deal with the same matter in different language, the latest expression of the legislature is controlling. *State ex rel. Board of Tax Commissioners v. Daviess Circuit Court*, 249 Ind. 580, 230 N.E.2d 761, 764 (1967); *see also Connell v. City of Logansport*, Ind.App., 397 N.E.2d 1058, 1061 (1979). The real estate improvement act's statute of limitations was adopted in 1967. As the Court of Appeals noted in *Dodd*, the real estate improvement statute "is very broad in its application." The product liability act's statute of limitations was adopted in 1978. Its coverage is much narrower. It applies only to product liability actions in which the theory of liability is negligence or strict liability in tort. Warranty claims are covered by the statute of limitations provided in the Uniform Commercial Code (I.C. § 26–1–2–725) or the real estate improvement statute itself (see *Luxurious Swimming Pools, Inc. v. Tepe*, 177 Ind.App. at 388, 379 N.E.2d at 995 n. 2). Since the product liability statute was more recently enacted and has a narrower scope of coverage than the real estate improvement statute, it governs products liability actions based upon negligence or strict liability in tort as the Court of Appeals intimated in *Dodd*.

Plaintiff cites and relies on a number of cases outside of this jurisdiction. Neither *Grover Hill Grain Company v. Baughman-Oster, Inc.*, 728 F.2d 784 (6th Cir. 1984), a case under Ohio substantive law, nor *Moorman Manufacturing Company v. National Tank Company*, 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982), compel a result contrary to that announced here. This court will leave it for others to decide whether the last word of the Illinois Supreme Court in *Moorman* eroded the interpretation of Illinois substantive law as set forth in *R.L. Grain Co. v. Chicago Eastern Corporation*, 531 F.Supp. 201 (N.D.Ill.1981). For what it is worth, *Smith v. Clayton & Lambert Manufacturing Company*, 488 F.2d 1345 (10th Cir.1973), cited by both parties, lends further support to the result announced here.

### B.

A review of the Indiana cases which have either cited or applied the Indiana product liability statute demonstrates that an action against the manufacturer of an allegedly defective item which becomes part of an improvement to real estate after the item is delivered by the manufacturer is a product liability action. *See Corbin v. Coleco Industries, Inc.*, 748 F.2d 411 (7th Cir.1984) (applying Indiana law) (product liability statute applied to manufacturer of aboveground swimming pool); *Wilson v. Robertshaw Controls Co.*, 600 F.Supp. 671, 673 (N.D.Ind.1985) (Ind.Code § 33–1–1.5–5 applied to action against waterheater control manufacturer); *Lukowski v. Vecta Education Corp.*, Ind.App., 401 N.E.2d 781 (1980) (strict liability in tort action recognized against manufacturer and installer of gymnasium bleacher); *see also Neofes v. Robertshaw Controls Co.*, 409 F.Supp. 1376 (S.D.Ind.1976) (strict liability action against manufacturer of component part of water heater, as well as against the heater's manufacturer, was cognizable under Indiana law). These cases demonstrate that courts in Indiana treat an action against a manufacture of a product as products liability actions even if the product ultimately becomes a part of an improvement to real estate.

Further, Indiana courts have applied product liability law in situations similar to this case in which an action has been brought against the manufacturer of an

item which has become part of a grain or silage storage system. In *Monsanto Co. v. Miller, supra,* the Indiana Court of Appeals applied the Indiana products liability statute (including the statute of limitations provision) in an action against a manufacturer of a coating which was applied to the inside of a silo. The case was viewed as a product liability action even though the coating had become part of an improvement to the real estate at the time it caused injury to the plaintiff's property. The real estate improvement statute was applied to the claim against the entity which had constructed the concrete silo. Ind.App., 455 N.E.2d at 393. The entity which has constructed the silo was intimately involved in designing, planning, and constructing a particular silo for a particular piece of real estate, unlike the manufacturer of the coating who was not involved in any way in improving the plaintiff's real estate. *Coffman v. Austgen's Electric, Inc.,* Ind.App., 437 N.E.2d 1003 (1982) involved negligence and strict liability actions against the manufacturers of an auger and grain dryer which were part of a grain storage system. The Court of Appeals noted that the plaintiff's strict liability claim would have been governed by the product liability statute had the statute been in effect at the time of plaintiff's injury. *Id.* at 1007 n. 2. In *Shanks v. A.F.E. Industries,* 275 Ind. 241, 416 N.E.2d 833 (1981), the Indiana Supreme Court applied the law of strict liability in tort in an action against the manufacturer of a grain dryer. The grain dryer was part of an automatic grain storage system and was connected by augers and elevators to several grain storage bins. The entire system was centrally wired and controlled. Despite the fact that the system was clearly an improvement to real estate when completed, the Supreme Court applied Section 402A of the Restatement (Second) of Torts, which applies to "one who sells any *product.*"

### C.

The strongest support in Indiana case law for the proposition that an action against a manufacturer of a product which later becomes incorporated into an improvement to real estate is governed by the product liability statute rather than the real estate improvement statutes is contained in *Beecher v. White, supra. Beecher* involved a constitutional challenge to the real estate improvement statute. One argument set forth by the plaintiff in that case was that the statute violated the equal protection clause or the special law proscriptions of the federal or state constitutions. Ind.App., 447 N.E.2d at 626. The plaintiff apparently argued that the real estate improvement statute conferred special immunity upon builders while discriminating against owners and materialmen without a reasonable basis for doing so. *Id.* The Indiana Court of Appeals, in sustaining the statute, provided a number of justifications for the differentiation between builders and owners. With respect to the differentiation between builders and materialmen, the Court of Appeals simply noted: "Materialmen and prefabricators are covered under the products liability statute. *See* Ind.Code 33–1–1.5–5 *et seq.*" *Id.* at 627. A prefabricator is one who manufactures in advance, often in standard sections that can be easily shipped and assembled. *See American Heritage Dictionary of the English Language,* 1032 (1975). Chief Industries fits within the definition of "prefabricator," and thus an action against it is governed by the product liability statute, not the real estate improvement statute.

In *Great Lakes Co. v. Merrill A. Jones & Associates, Inc.,* Ind.App., 412 N.E.2d 257 (1980), the plaintiff tried to avoid the application of the real estate improvement statute of limitations to its claim against a general contractor by arguing that the general contractor was not covered by the statute because it supplied building materials in addition to planning, observing, and supervising the construction. The plaintiff's claim against the general contractor was based solely upon the allegedly inadequate supervision the general contractor provided over the electrical contractor:

Great Lakes has charged no one with negligence in the role of a supplier of materials. At most, Jackson [the general contractor] erred in planning, supervising, or observing installation of materials which it supplied. I.C. 34–4–20–2 bars the action to recover damages from Jackson for such deficiencies.

*Id.* at 261. Given this reasoning the real estate improvement statute would not be applicable here.

The Motion for Summary Judgment filed by defendant Chief Industries is GRANTED. SO ORDERED.